OLIVER P. ALBERT ET AL.

*vs.*

THE SAFE DEPOSIT AND TRUST COMPANY OF
BALTIMORE, ADMINISTRATOR.

*Wills: residue; presumptions against intestacy.*

Where a will purports to dispose of the residue of an estate, there is a presumption against intestacy, but even where there is a residuary clause such presumption can not change the clear effect of the language the testator used.          p. 106

A testator by his will bequeathed his sisters a sum of money (which he declared was all he was worth), and which the will stated was in the possession of a certain trustee; the inventory of his estate disclosed no such fund; the Orphans' Court held that the will was inoperative, and that the legatees were only entitled to receive their distributive shares with the other next of kin.                              pp. 104-112

Such a will, if operative, would limit the legacy to the particular sum named.                          p. 112

*Decided January 16th, 1918.*

Appeal from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John Hinkley,* for the appellants.

*Richard H. Pleasants,* for the appellee

Boyd, C. J., delivered the opinion of the Court.

Stephen D. Spence died in New York City on October 28th, 1916, at 92 years of age, unmarried, without leaving children or descendants or parent surviving him. Subsequent to his death, George H. Howard of Washington, D. C., found among some papers which the deceased had entrusted to him, the following will:

> "This, my last will and testament, made by me, Stephen D. Spence, this 31st day of May, in the City of Baltimore, in the year of our Lord 1849, in which I bequeath all that I am worth, amounting to four thousand three hundred dollars or thereabout, which is now in the possession of Carroll Spence as trustee, to be equally divided between my two sisters, Mary Clare Macgill, wife of Oliver P. Macgill, and Roberta T. Brooke, wife of Chas. Brooke, Jr., after paying all claims against me. This revokes all other wills or papers of any kind signed by me.
>
> "(Signed)    Stephen D. Spence."

It was witnessed by three persons and duly probated in the Orphans' Court of Baltimore City. The only next of kin in this State entitled to administer having renounced her right to do so, and having requested the Court to appoint the Safe Deposit and Trust Company of Baltimore administrator with the will annexed, that was accordingly done. That company filed a petition in the Orphans' Court asking it to designate a day for a meeting of the legatees and next of kin of the deceased, in order that their rights in the estate might be ascertained and determined by the Court. An order was passed by the Court and the notices required by section 143 of Article 93 of Code were duly given. A number of the next of kin of the testator appeared and filed answers. The inventory of the personal estate included jewelry appraised at $25.75, cash in the hotel where the deceased died amounting to $318.26; deposits in five banks in New York and two items of each held by the Safe Deposit

& Trust Company (one of which it held as trustee under the will of Roberta T. Brooke and the other as trustee under the will of Charles C. Shippen), the total amount of the inventory being $7,404.78. The bank books covering the deposits in the five banks were delivered to the Safe Deposit & Trust Co. by the proprietor of the Hotel Churchill, to whom they were given for safe keeping by the decedent.

An agreed statement of facts shows that the next of kin were as set forth in the petition of the Safe Deposit & Trust Company. In addition to the two sisters named in the will, the testator had a brother, Carroll Spence, a sister, Anna Josepha Smith, both of whom predeceased him and left issue, and he had another brother, Charles S. Spence, who also predeceased him, but left no issue. Mrs. Macgill died in 1888, the appellants being her next of kin at the time of the death of the testator, and Mrs. Brooks died in August, 1881, and her next of kin, living at the time of the death of the testator, are the same as those of the testator. The appellants contend that the will was a valid and effectual disposition of the entire estate now being administered, and operated to bequeath the same to the next of kin of said Mary Clare Macgill, their mother, and of Robert T. Brooke, the other legatee named in the will, each of the appellants claiming one-half of the half bequeathed to their mother, and one-half of the third of the half bequeathed to Roberta T. Brooke. Under their contention each of them would be entitled to four-twelfths, or one-third of the entire estate, leaving only a third to be divided *per stirpes* between the only child of Carroll Spence and the son and children of deceased children of Anna Josepha Smith. The Court below decreed that the will did not operate to pass any portion of the estate in the hands of the Safe Deposit and Trust Company, but that as to all of it, the said Stephen D. Spence died intestate, and the administrator was directed to make distribution as therein set forth, resulting in giving each of the appellants one-

sixth instead of one-third of the estate. From that decree this appeal was taken.

The controversy is entirely over the interpretation of the will—no question being raised as to who are the next of kin. In the agreed statement of facts it is admitted that the entire estate which has come into the hands of the administrator is set forth in the inventory filed; and that no information has been obtained with regard to the fund referred to in the will. It is further admitted that some of the relatives of the testator made contributions towards the payment of annuities to him for a number of years before his death—some of them having been in the shape of trusts for the purpose. The names of the contributors and amounts given annually are given in the agreed statement. It is also agreed: "That the said Stephen Decatur Spence in his later years lived very frugally, and saved some portion of the income from the various trusts and contributions made by his relatives herein referred to, which savings gradually increased his bank accounts." An officer of the Safe Deposit and Trust Co. testified that he had ascertained that $5,000 had been deposited to the credit of Stephen Decatur Spence in the Second National Bank of New York on February 27, 1892, which seemed to have come through John P. Pleasants & Sons of Baltimore, but no explanation of what it was for, or who paid it, could be obtained. In that bank there was a balance of $1,000.00 on deposit when the testator died, although it is not shown when any deposit was made excepting the $5,000.00 above mentioned. It was also shown that there was a proceeding in the Circuit Court for Baltimore County, instituted April 3, 1891, entitled *S. Decatur Spence et al* v. *Nicholas Carroll Spence et al,* in which property charged with an annuity of $400.00 by the will of Roberta T. Brooke for the benefit of Stephen D. Spence was sold, and the sum of $5,880.63 was audited to the Safe Deposit & Trust Company, trustee, on July 12, 1892. That fund realized about $250.00 net per annum, which was paid to Mr. Spence until his

death. There was no connection between it and the $5,000.00 deposited in the Second National Bank of New York. Nor is there any connection between the fund stated in the will to be in the hands of Carroll Spence, trustee, and either of the other funds mentioned, and there is nothing whatever to show where that fund came from, what became of it, or when the trust ended, if it really existed. It would therefore be pure guess-work to attempt to determine any of those questions. The mere fact that the will was made fifty-seven years before the testator's death would not have prevented it from operating upon such property owned by the testator at the time of his death, as it showed was the intention of the testator to bequeath by it, and of course, our paramount duty is to endeavor to ascertain that intention. If the testator had simply said, "I bequeath all that I am worth, to be equally divided between my two sisters * * * after paying all claims against me," the interpretation of the will would have been very simple, but that is not all that he said—It was: "all that I am worth, amounting to four thousand three hundred dollars or thereabout, *which is now in the possession of Carroll Spence as trustee.*" If he had omitted the words "all that I am worth," and had simply bequeathed to the two sisters "four thousand three hundred dollars or thereabout which is now in possession of Carroll Spence as trustee," there would have been no room to question the fact that he not only did not intend to leave to them after-acquired property, but that he did not bequeath to them anything except that specific fund. To give the words "all that I am worth" used in the connection it is in the will, the force and effect contended for would necessitate leaving out of the will everything between that expression and the direction "to be equally divided between my two sisters," etc. As well might it be said that if the testator had left to his two sisters all his personal property "which is now in the possession of Carroll Spence as trustee," the clause quoted could be stricken out and the property would go to such persons as it would have

gone to if the legatees had survived the testator, under section 336 of Article 93. The expression "all that I am worth," as used by the testator in connection with what follows, while unnecessary, was probably simply intended to let his sisters, and perhaps all of his other heirs and next of kin, know that the sum named was all that he then had, and also where it was.

The general principle applicable to the construction of wills, as claimed by the appellants, will not be questioned. The testator did not by general terms first leave all his property to the appellants, and then subsequently use terms which it is claimed limited or reduced it, as sometimes occurs in will cases, but the construction contended for would require us to cut the sentence in two, and ignore the very part which explains the meaning and intention of the testator. It is true that where a will purports to dispose of the residue of an estate, there is a presumption against intestacy, but even where there is a residuary clause such presumption can not change the clear effect of the language the testator used. *Henderson* v. *Henderson,* 131 Md. 308, 101 At. 691. Courts may even struggle against adopting an interpretation which will result in intestacy, but they are not authorized to make a will say what is clearly contrary to the intention of the testator, as shown by its terms. In *Lyon* v. *Safe Deposit & Trust Co.,* 120 Md. 514, we said: "There is undoubtedly a presumption that when a party makes a will containing a residuary clause, or other language of similar import, he did not intend to die intestate as to any part of his estate. It is not accurate to say that there is always such presumption when a person makes a will, for it is by no means an unheard of thing for one to make a will for the purpose of disposing of some particular article or property and to leave the rest of his estate for distribution under the law."

Section 336 of Article 93 provides that "Every last will and testament executed in due form of law after the first day of June, 1850, shall pass all the real estate which the

testator had at the time of his death. That statute as orig-
inally passed, Ch. 229 of Acts of 1849, read that such will
"shall be construed with reference to the real and personal
estate comprised in it, to speak and take effect as if it had
been executed on the day of the death of the testator or testa-
trix, unless a contrary intention shall appear by the will."
As prior to the statute, the rule in reference to personal prop-
erty was that a will spoke and took effect from the death of
the testator, it was doubtless deemed unnecessary in the codi-
fication of the laws of 1860 to continue the provision as to
personal property, and the provision in the Code of 1860
has been followed in subsequent Codes. The rule has, by
the statute, been made the same as to real estate, and hence
interpretations of wills devising real estate, as well as those
affecting personal property only are applicable in the con-
struction of this will. In *Dalrymple* v. *Gamble,* 68 Md. 523,
where the testator said: "It is my will that my ranch and
all my personal property shall be inherited by Marie Eliza-
beth Hatch," the decision, holding that after-acquired personal
property passed to that person, went as far under the circum-
stances as any reported case in this State, but JUDGE MILLER,
in speaking for the Court, said: "He does not say 'my ranch
and all my personal property *thereon,*' nor 'all my personal
property in California,' "—indicating that if one of those
expressions had been used the will would not have affected
the property inherited by the testator from his brother, who
died intestate in Baltimore. It was said in *Frick* v. *Frick,*
82 Md. 218, 223, in speaking of *Dalrymple* v. *Gamble,* "That
decision rested on the fact that *there was nothing in the
will to restrict the term used*—'all my personal property.' "
In *Bourke* v. *Boone,* 94 Md. 473, the expression under con-
sideration was, "all the land belonging to me; being my part
of which I obtained from my father." This Court said: "We
can not regard this as a general devise or equivalent thereto,
for she proceeds to declare specifically and particularly what
it is she intends shall pass. The words 'all my land' do not

stand alone, and they must be taken in connection with the words that immediately follow, which are: 'being my part of which I obtained from my father,' " etc. In that will there was an introductory clause which read: "What property it hath pleased God to bless me with in this life, I give and bequeath in manner and form following, to wit," etc., but notwithstanding that it was held that the niece only took the land the testatrix obtained from her father. It would be difficult to distinguish that case from this, as to the effect of the language following the words "all my land" in that case, and "all I am worth" in the will now under consideration. In *Cole* v. *Ensor,* 3 Md. 446, the clause interpreted was: "I give and devise unto my grandson, Solathiel Cole, my negro girl Beck, together with the rest and residue of my estate, consisting of household furniture, cattle, horses, farming utensils, all and singular of whatever kind, named or intended to be named," etc. When the testatrix died she was the owner of ten negro slaves and the residuary legatee claimed that all of them passed to him under the residuary clause. The Court said: "If the clause in question had terminated with the expression 'the rest and residue of my estate,' it might doubtless have passed all the property owned by the testatrix at the time of her death, and which had not been specifically devised. But these words are qualified and restricted by the words immediately succeeding, namely, 'consisting of.' The effect of these last named words is to indicate that the testatrix intended to enumerate what she considered to be the *rest and residue of her estate,* and what she designed should pass under that general designation." It was held that the other negroes did not pass to the residuary legatee.

But it is not necessary or desirable to prolong this opinion by quoting from other decisions. As a rule, the most that can be helpful by referring to other cases, when we are called upon to construe wills, is by way of illustration, as it is very unusual to find two wills exactly alike or executed under sim-

ilar circumstances.    After all is said, we must generally
return to the language of the will under consideration, and
the circumstances under which it was executed.    In this case
the language used is, in our judgment, perfectly plain, and
there is nothing in any part of the will to alter the meaning
of what we have spoken of.    The evidence wholly fails to
show that the sum left to the two sisters, or any part of it,
is embraced in what is included in the inventory, which is
conceded to be all that the testator had at the time of his
death, and from what we have said above it will be seen that
in our opinion a proper interpretation of this will limits the
bequest to what is therein mentioned, namely, the $4,300 or
thereabout, "which is now in the possession of Carroll Spence,
as trustee."    We must, therefore, affirm the order of the
lower Court, but, as the proceeding was instituted by the
administrator for its protection, as authorized by the statute,
we will direct the costs to be paid out of the estate.

> *Decree affirmed, the costs, above and below, to*
> *be paid by the administrator out of the*
> *funds in his hands.*