# GEORGE W. B. BARTLETT

### vs.

## ELIZABETH W. D. LIGON ET AL.

*Lapse of Legacy—Statute to Prevent—Testator's Insanity Before Death—Statute Applicable to Pre-existing Will— Evidence as to Insanity—Burden of Proof— Retroactive Laws.*

In Act 1910, Ch. 37 (Code, Art. 93, Sec. 326), which prevents the lapse of a devise or legacy, the proviso that it shall not apply to the will of one dying after the passage of the Act, if the testator, after its execution and before the death of the devisee or legatee named, shall become insane or otherwise incompetent, applies to wills made before the passage of the Act, when the testator became insane or incompetent after its passage, but before the death of the devisee or legatee, and then survived the latter. pp. 623-626

Wills of personal property speak and take effect as if executed on the day of testator's death. p. 626

As a testator may change his will at any time before his death, if competent, those named as beneficiaries have no vested rights thereunder, and hence there is no constitutional objection to the passage of a law which may affect what they would, but for such statute, have taken. p. 626

Laws are not unconstitutional because they are made retrospective, or are made applicable to pre-existing cases, unless they impair the obligation of contracts or are *ex post facto* within the United States Constitution or the Maryland Declaration of Rights. . p. 626

The policy of the courts is not to declare laws retroactive, if they can fairly be construed to have been intended to be prospective. p. 626

It is to be presumed that testatrix made her will in view of the law as it stood when she made it, but with the knowledge

that the Legislature could change or repeal it, and hence could have made provision in her will for that contingency.     p. 627

Courts must be governed by the intention of the Legislature if that can be ascertained from the statute, and cannot legislate for it simply because they may think it ought to have said something else, in order to do full justice.                     p. 627

One asserting that a legacy lapsed by reason of the proviso, in Act 1910, Ch. 37 (Code, Art. 93, Sec. 326), that the statute should not apply to the will of one dying after its passage who, after the execution of the will and before the death of the legatee named, shall become insane or otherwise incompetent, has the burden in the first place of showing that the case comes within the words of the proviso, but when testator's insanity, after the date of the will and before the death of the legatee, is shown by an inquisition finding him a lunatic without lucid intervals, the burden is on one asserting that he recovered his sanity sufficiently to be able to revoke or alter the will.

pp. 630, 631

The mere fact that an old woman, who had been adjudged, on inquisition by a jury, a lunatic without lucid intervals, remembered that she owned certain stock, this stock having been owned by her for many years and constituting the bulk of her estate, does not show that she had recovered her sanity sufficiently to be able to revoke or alter her will.           p. 632

The case of *Hemsley* v. *Hollingsworth,* 119 Md. 431, discussed, and certain errors in the opinion as published referred to.
pp. 628-630

*Decided January 16th, 1920.*


Appeal from the Orphans' Court of Baltimore City.


The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and ADKINS, JJ.

*Frank Gosnell,* with whom were *Frank Gosnell, Jr.,* and *Marbury, Gosnell & Williams* on the brief, for the appellant.

*Philip H. Close* and *George P. Bagby,* with whom was *James T. Carter* on the brief, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree of the Orphans' Court of Baltimore City, directing the Safe Deposit and Trust Company of Baltimore, Admr. *c. t. a.* of the estate of Mary W. Jordan, to make distribution of the personal estate and property of the said Mary W. Jordan remaining in its hands, by dividing the same equally share and share alike, among the persons therein named as her next of kin. That decree was the result of a petition filed by the Admr. *c. t. a.* under the provisions of Sec. 143 of Art. 93 of the Code.

Mrs. Jordan made a will on the 2nd day of April, 1904, by which she willed and bequeathed all of her estate to her son by a former marriage, Dr. Charles F. Nolen. He died on June 30, 1916, and Mrs. Jordan died on June 23, 1918, without leaving a husband or issue surviving her, and without having changed her will. On a petition filed in the Circuit Court for Baltimore County by Dr. Nolen, a writ *de lunatico inquirendo* was issued a few days before his death, and by an inquisition taken July 5, 1916, the jurors found that Mrs. Jordan was "of unsound mind and a lunatic without lucid intervals, so that she is not capable of the government of herself or the management of her estate, and that she has been in such state of mind for more than a year past." The next day the Circuit Court confirmed the inquisition, and appointed the Safe Deposit and Trust Company committee of her person and of her estate, which consists entirely of personality. The main controversy is whether the bequest to Dr. Nolen lapsed, and hence the estate passed to the next of kin of Mrs. Jordan, or whether it was saved from lapsing and, therefore, went to the next of kin of Dr. Nolen. That depends upon the construction and effect of the Act of 1910, Ch. 37, which amended Sec. 313 of Art. 93 of the Code of 1888 (now Sec. 326 of Art. 93 of Ann. Code). In 1810 a statute was passed to prevent the lapsing of a devise, legacy or bequest by reason of the death of the devisee or legatee in the lifetime of the testator, which continued in force in this

State without any modification or change, which would affect this case, until 1910. The language used in the Codes of 1860 and 1888 is the same as that in the Act of 1910, with the exception of a proviso added by that Act, and the words "except as hereinafter provided," inserted by reason of the proviso being added. But for the change made by the Act of 1910 there could have been no question about the right of Dr. Nolen's next of kin to take the estate, and hence we will only quote the new part of the Act, which is:

> "provided, however, that this section shall not apply to the last will, testament or codicil of any person dying after the passage of this Act (March 31, 1910), where the maker of said last will, testament or codicil, after the execution thereof and before the death of such devisee or legatee, shall become insane or otherwise incompetent to cancel, revoke, annul, obliterate or alter said last will, testament or codicil."

Under our construction of the statute in *Hemsley* v. *Hollingsworth,* 119 Md. 431, it "must be construed to mean, shall become insane or otherwise incompetent, and so continue to be that the testator is unable to change his will." Therefore, if a testator recovered or had such lucid intervals as would enable him to cancel, revoke, annul, obliterate or alter his will the proviso would not apply. But the important question now to be determined is whether it was intended that the Act should apply to wills made before the Act was passed, if the testator became insane or incompetent after it passed, but before the devisee or legatee died, and then survived such devisee or legatee.

As a devise or bequest did lapse at common law, if the devisee or legatee predeceased the testator, unless there was something in the will to save it, it was only by reason of the Act of 1810 that such lapses were avoided in this State during the hundred years that Act was in force, before the Act of 1910. The Legislature could have entirely repealed the Act of 1810, instead of repealing and re-enacting it with

an amendment, as it did in 1910, and if it had done so, all wills made prior to the passage of such an Act, if the testators died afterwards, would have been affected by the repeal, so that the devises and bequests to devisees and legatees who predeceased the testators would have lapsed. We do not, of course, refer to will in which there were provisions which would have prevented them from lapsing. It will be well to recall some of the decisions which this Court has rendered which may aid us in determining this case. In *Glenn* v. *Belt,* 7 G. & J. 362, 367, the Court held in reference to the Act of 1810 that "The time of the transfer is the death of the testator; and as the legatee died before the testator, he would not be the person meant as the object of the statutory transfer. But the law refers to such persons then in *esse,* entitled by law to the distribution of the legatee's estate in case of intestacy, that is, his representatives."

The Court referred to the unreported case of *Spence* v. *Gillis,* decided by the Court of Appeals on the Eastern Shore, June term, 1824, as decisive of the one then before it. In that case Mary Spence made her will October 28, 1809, and died September 1, 1821. She made Sally Spence, who died in 1812, her residuary legatee. Ara Spence administered on the estate of Mary, and there was a residue for which Joseph Gillis, exeuctor of Sally Spence, sued Ara Spence; the County Court gave judgment for the plaintiff but upon appeal it was reversed, and the residue was distributed to the representatives of Sally Spence. It will thus be seen that although the will of Mary Spence was made in 1809 and she died in 1821, the Act of 1810 was held to be applicable to her will, and the residue went to the representatives of Sally Spence who had died in 1812. If that had not been so, then a devise or legacy in any will made before the Act of 1810 would have lapsed, if the devisee or legatee had predeceased the testator. Such a construction might have affected many wills made before the Act of 1810, and there is no case in this State holding that a devise or bequest in a will made

before the Act of 1810, by a testator who died after the passage of the Act, lapsed because the will was made before 1810. As the Act of 1810 was held to be applicable to wills made before its passage, it is difficult to see why the Act of 1910 should not be.

In *Magruder* v. *Carroll,* 4 Md. 335, our predecessors held that the Act of 1849, Ch. 229, relating to wills passing real estate afterwards acquired, of which the testator died possessed, included wills executed prior to the passage of the Act, although CHIEF JUSTICE TANEY had in the U. S. Circuit Court held to the contrary. The Supreme Court of the United States also held contrary to the Court of Appeals in a case before it, but our predecessors in *Alexander* v. *Worthington,* 5 Md. 471, followed the ruling in *Magruder* v. *Carroll,* in a vigorous opinion delivered by CHIEF JUDGE LE GRAND, notwithstanding the decision of the Supreme Court, it not being a question of which the decision of that Court was necessarily controlling.

In *Trustees of Western Maryland College* v. *McKinstry,* 75 Md. 188, Mary M. McKinstry died on the 28th of December, 1890, and letters of administration were granted to her brother. On the 25th of the following March the administrator took to the Orphans' Court a Bible which had belonged to the deceased, and upon a leaf in the back of it there was written in the handwriting of the deceased gifts to the Western Maryland College, the Theological Seminary and to Ward Hall, dated July 18, 1883, and signed Mamie McKinstry. Prior to the adoption of the Act of 1884, Ch. 293, which required two or more witnesses, no more formality was required in the execution of a will disposing of personal property than in that paper, and the second section of the Act of 1884 expressly saved from its operation all wills bequeathing only personal property, executed before August 1, 1884. But as in the Code of 1888 that saving clause was omitted, and Miss McKinstry died after that Code went into effect, it was held that the paper was not entitled to be ad-

mitted to probate as a valid will of personal property. See also *Remington* v. *Met. Savings Bank,* 76 Md. 546. In *Colonna* v. *Alton,* 23 App. D. C. 296, The Court of Appeals of the District of Columbia, through CHIEF JUDGE ALVEY, held that as a will did not comply with the formalities required by a statute passed after the will was executed and before the death of the testator, it was invalid. There are many other cases to the same effect.

Without quoting from other cases to illustrate the position this Court has taken, the doctrine is settled beyond controversy, here and elsewhere, that as wills are ambulatory, they do not take effect until the death of the testator. Wills of personal property speak and take effect as if executed on the day of the death of the testator. *Dalrymple* v. *Gamble,* 68 Md. 530; *Frick* v. *Frick,* 82 Md. 218; *Albert* v. *Safe Deposit Company,* 132 Md. 104. Inasmuch as a testator has the right to change his will at any time before his death that he is competent to make the change (not speaking of where the testator has legally bound himself to leave to a certain party his property, or some part thereof) those named as beneficiaries have no vested rights in property bequeathed to them by a will, and hence there can be no constitutional objection to the passage of a law which may affect what they would, but for such statute, have taken.

Laws are not unconstitutional because they are retrospective, or made applicable to pre-existing cases, unless they impair the obligation of contracts or are *ex post facto* within the meaning of the Constitution of the United States, or of our Declaration of Rights, but the policy of the Courts is, and should be, not to declare laws retroactive, if they can fairly be construed to have been intended to be prospective. It must also be conceded that it is to be presumed that Mrs. Jordan made her will in view of the law as it stood when she made it, and that she intended that in the event of her son predeceasing her, her estate would go to those who were his next of kin at the time of her death. *Hemsley* v. *Hollings-*

*worth, supra,* 119 Md. 440; *Duering* v. *Brill,* 127 Md. 112; *Redwood* v. *Howison,* 129 Md. 577, 584. But it is also to be presumed that the testatrix knew that the Legislature could change the statute or repeal it, and hence she could have made provision as to where it should go in case her son predeceased her, when she was competent to do so. Another well recognized rule is that courts must be governed by the intention of the Legislature if that can be ascertained from the statute, and that in ascertaining its intention they must see what the Legislature said, and cannot legislate for it simply because they may think it ought to have said something else, in order to do full justice to all which may be affected by such legislation.

Keeping these rules in mind let us see what the Legislature said and what we said in *Hemsley* v. *Hollingsworth,* which is so much relied on by the appellant. The Act begins by providing that "No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee * * * in the lifetime of the testator, except as hereinafter provided." Then after stating what effect and operation in law every such devise, legacy or bequest shall have, the proviso follows. Although the Legislature presumably knew that there were some, possibly many, wills in existence when it passed the Act of 1910, in which the testators had left property to those who had no issue, and were not likely to have any, and that in case they predeceased the testator it would under existing law go to the representatives of the devisees or legatees, whoever they might be at the time of the testator's death, it provided that the Act should take effect from the date of its passage. But it did not make any exception in favor of wills executed before its passage, and said, "provided, however, that this Act shall not apply to the last will, testament or codicil of *any person dying after the passage of this act,* where," etc. Those whose wills were thus affected were *"any person dying after March 31, 1910,"* the date of the passage of the Act, as declared

by the Legislature, which, as we have seen, had the legal right to so declare, but the Legislature did not see proper to exempt wills made before that date, which it could so easily have done that the presumption is that it would have done so, if intended. Then when it fixed the periods between which the insanity or incompetency might occur the Act said *"after the execution of the will and before the death of such devisee or legatee."* A will made prior to the passage of the Act may therefore be within the period fixed, and hence we cannot say that it was intended not to be included, in the absence of something in the Act to indicate such intention. It is true that by that construction such an instance as the appellant gives may be a hardship. He asks if A. had made his will in 1909, leaving his estate to his son B. and became insane April 1, 1910, without any knowledge or means of knowing of the existence of the new law, and B. died April 2, 1910, the testator still being insane, would the legacy to B. in such case lapse? That may seem to be a hard case, but it would work no more hardship than if A. had made his will on April 1, 1910 (the day after the Act took effect), leaving his estate to his son B. and then became insane before the death of his son, without changing his will. In point of fact it would be very unusual for anyone making a will to anticipate his own insanity, and it would be safe to say that not one person in ten thousand would change his will because he feared that he would become insane before his beneficiary died.

It only remains under this branch of the case to see what we did decide in *Hemsley* v. *Hollingsworth.* We not only did not decide that the provision was only intended to apply to wills made after the passage of the Act, but we distinctly said "we will not pass on that question." The language of the statute justified the conclusion we reached in that case. We pointed out that by the language "shall become" the Act used a term which "in its common and ordinary usage, unless accompanied by qualifying words which show a con-

trary intent, always refers to the future." 35 *Cyc.* 1451; 25 *Am. & Eng. Enc. of Law,* 635. But there is nothing in the Act which enables us to hold that it did not apply to wills already executed, as there is nothing to suggest that it only meant those thereafter executed. If there was, we might then follow the rule, and hold it to be prospective, as we did in *Hemsley* v. *Hollingsworth* in reference to the point there involved, but as we are now convinced that it is not susceptible of a construction that will make it prospective only, as to time of the execution of a will, we can do nothing but follow the terms of the statute. In the *Hemsley case* Mrs. Sterrett was insane when the Act was passed, and became so after she had made her will and before the death of the devisee. If the proviso had been applicable to her, then her will in effect "was simply condemned as no will as to this bequest," as we said in that case, unless she recovered or had lucid intervals, while in this case the testatrix had several years after the passage of the Act and before she became insane to change her will, if she desired to do so. While that may not be controlling in the construction of the statute, it does show that no particular injustice was done her by reason of the Act not having a saving clause in favor of wills already made. See *Magruder* v. *Carroll,* 4 Md. 350, as to the will of that testator. The statement made by the Court in *Hemsley* v. *Hollingsworth,* intimating that the Court had some doubt whether the lower Court should not have held the proviso to be only applicable to wills made after the passage of the Act had better been left unsaid, but as we expressly stated that we would not pass on that question, it cannot be used as an authority in this case. It is evident from what we did say that we had not then concluded that the proviso did not apply to wills made before it was added, and after now giving it thorough and full consideration we are convinced that it is not confined to wills made after the passage of the Act.

Before leaving that case we desire to refer to several errors in the opinion as published. On page 444, in the next to the last line in the first paragraph, the word "after" is used when it manifestly should have been "before." On page 443, near the middle of the long paragraph there is an omission which should be supplied. The writer of this opinion (who also wrote that one) finds in his volume of 119 Md. a note that an interlineation should be made after the word "where," in the tenth line of that paragraph, so that the sentence would read, "and refers only to cases where the maker of the will, etc., after the execution thereof and before the death of the devisee or legatee, became insane after the passage of the Act." We do not know how the omission was made, but probably in copying the opinion—the omission not being noticed by the writer or others when it was read and adopted. The word "usual" in the fifth line from the bottom of that page should be "unusual," as the context shows.

Having reached the conclusion that the proviso does apply to wills made before the Act of 1910 was passed, it only remains to be determined whether the evidence shows that Mrs. Jordan had lucid intervals after the death of her son, and was mentally competent to cancel, revoke, annul, obliterate or alter her will, if she had seen fit to do so. The parties to this appeal differ as to upon whom the burden of proof rests—each side contending that it is on the other. It may be conceded that in the beginning it is upon the party relying on the proviso to show that the devise, bequest or legacy has lapsed—the appellees in this case. They were required to satisfy the Court that the testatrix died after the passage of the Act and after the death of her son, that after the execution of the will and before the death of her son she became insane or otherwise incompetent to cancel or alter her will. Under our construction of the proviso that condition was to so continue that the testatrix was unable to change her will. But in this case it was clearly shown that the testatrix did

become insane after the will was executed and before the death of the legatee, and she was duly adjudged insane without lucid intervals, as shown above. The inquisition and decree of Court continued in force until her death. In *Johnson* v. *Safe Deposit Co.,* 104 Md. 460, 468, it was said: "The finding of a jury in such a case is *prima facie* proof of continuing incapacity, and to warrant the discharge of the committee there must be clear and satisfactory proof that the party has been restored to mental soundness." It has also been held in a number of cases involving testamentary capacity that while the presumption is in favor of sanity, and the burden of proof is upon the party impeaching a will for want of testamentary capacity, yet when permanent insanity is proven, the burden is shifted, and in such case the person setting up the will must prove the competency of the testator at the time of its execution. *Taylor* v. *Creswell,* 45 Md. 422, 430; *Jones* v. *Collins,* 94 Md. 403, 414; *Gesel* v. *Baugher,* 100 Md. 677, 687. In *Jones* v. *Collins* it was said that, where permanent insanity is established, or insanity with lucid intervals, "in the one case the caveatee must show full recovery and in the other that the will was executed in a lucid interval."

It would serve no good purpose to discuss the evidence at much length. After carefully considering it, we cannot say that it shows that Mrs. Jordan ever sufficiently recovered to enable her to change her will. She is shown to have been incompetent in July, 1916, and at least a year before that, according to the inquisition, and from June 30, 1914, until about January 25, 1917, the time that she was in Dr. Gundry's sanitarium, according to his evidence she was incompetent and was suffering from senile *dementia*, together with arterial trouble which he said was usually stationary or progressive. Dr. Lockard testified that she was incompetent to execute a deed or contract when he saw her two weeks or so before her death. The interview with Mr. Gibson and the letters she wrote to him do not show that she had so far re-

covered as to be able to validly change her will. It is not unusual for insane persons to remember that they had certain property, and her inquiry about the B. & O. stock and about her estate would not have justified the Court in discharging the committee, or releasing her from its custody. The letters throw but little light on the subject. In the conversation with Mr. Gibson she made no claim that she was entitled to have her property restored to her. We cannot agree with the learned attorney for the appellant that the quotations he made from *Bouvier's Law Dict.* on *dementia,* or from *Owings' case,* 1 Bland 389, are sufficient to show that Dr. Gundry was mistaken in his diagnosis of Mrs. Jordan's case. He was not only an expert, but his opportunities to know his patient during the two years and a half she was in his sanitarium were unusually good, and moreover she was the mother of a close friend. The definition of dotage given by CHANCELLOR BLAND certainly does not conflict with Dr. Gundry's evidence, especially if we turn to the page of 1 *Bland* following the one which the appellant quoted from. It would not require much vigor of mind for an old woman who had owned stock for years (especially when it constituted the bulk of her estate) to remember that she owned it, but when we recall the testamentary capacity which a testator must possess, in order to make a valid will, as held by cur decisions, it is altogether another matter. So without pursuing this branch of the case further, we are of the opinion that the evidence is not sufficient to show that Mrs. Jordan at any time after the death of her son or after she became insane, made such recovery, or had such lucid intervals, as exempted her will from the effects of the proviso in the Act of 1910, and hence we hold that the bequest to her son did lapse.

> *Decree affirmed, the appellont to pay the costs in the lower Court, the costs in this Court to be paid out of the estate.*