ANINHA C. LIVINGSTON *v.* SAFE DEPOSIT & TRUST COMPANY, Trustee, et al.

[No. 40, April Term, 1929.]

*Decided May 24th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Robert H. Freeman,* with whom were *All, Henderson & Freeman* on the brief, for the appellants.

*Edward H. Burke,* with whom were *John L. Sanford, Walter C. Mylander, Victor Wilson, Lawrence E. Ensor,* and *Bowie & Burke,* on the brief, for the appellees.

.494

OFFUTT, J., delivered the opinion of the Court.

Mrs. Catherine C. Lanahan, having on March 21st, 1912, executed in due form a last will and testament, and on May 29th, 1914, July 16th, 1918, and July 14th, 1919, respec- tively, codicils one, two and three thereto, died on February 13th, 1920. Jerome Lloyd Unduch, a nephew of the testa- trix, to whom in that will she had bequeathed $25,000, died on February 4th, 1920. The question presented by this appeal is whether the legacy to him lapsed.

The legatee left to survive him a widow, now Aninha C. Livingston, and two infant children, William Lloyd Unduch and Donald Carver Unduch, the appellants in this case, and in respect to that question, they now contend that the legacy to Jerome Lloyd Unduch did not lapse, because (1) it was saved by the statute, chapter 37, Acts 1910, since amended by chapter 202, Acts 1920, which prevented the lapsing of legacies to persons dying in the lifetime of the testator, and (2) if the statute did not apply, nevertheless the legacy did not lapse at common law, because the testatrix manifested a contrary intention, and at common law such an intention must be given effect.

On the other hand, the appellee, the Safe Deposit & Trust Company of Baltimore, trustee under the said will and the several codicils thereto, contends, (1) that from the death of the legatee until the death of the textatrix she was mentally incompetent to cancel or alter her will, and that therefore by the express terms of the statute it did not apply to or affect the legacy, and (2) that at common law a legacy to one who died in the lifetime of a testator lapsed, unless the testator expressed in the will a specific intent to the con- trary, that in this case no such intent can be inferred from any language to be found in the will or the several codicils, and that therefore the legacy to Jerome Lloyd Unduch lapsed and fell into the residuary estate of the testatrix.

Mrs. Lanahan's will, which was probated in the Orphans' Court of Baltimore County on February 19th, 1920, is divided into two parts. In the first part, after providing for a number of specific trusts, the testatrix left pecuniary lega-

cies to various persons natural and corporate, and among others \$25,000 to Jerome Lloyd Unduch. The second part of the will provides for the disposition of the residuary estate. Finally it appointed Hon. N. Charles Burke executor and also trustee to execute the trusts created by the will, and, in the event of his death, the Safe Deposit & Trust Company of Baltimore. Judge Burke in due course qualified as executor, and later filed in the Circuit Court for Baltimore County a petition asking that court to assume jurisdiction of the trusts created by the will, which was done, and he thereupon, by filing his approved bond therein, qualified in that court as trustee of that estate. But neither as executor nor as trustee did he pay the personal representatives or next of kin of Jerome Lloyd Unduch the legacy of \$25,000 bequeathed to him. And on June 26th, 1928, the appellee, which, at his death, under the terms of the will, succeeded Judge Burke as trustee, filed in the Circuit Court for Baltimore County a petition, in which among other things it alleged:

"That by the last will and testament of the said Catherine C. Lanahan the sum of \$25,000 was bequeathed to Jerome Lloyd Unduch. That there is no record of the payment of said legacy and the information of your petitioner is that said legacy was not in fact paid because the late N. Charles Burke, the executor under said last will and testament, considered that said legacy had lapsed under the provisions of chapter 37 of the Acts of 1910, which was then in force, for the reason that, before the death of the said legatee, which occurred on February 4, 1920, and continuously thereafter until the time of her death, he, the said N. Charles Burke, considered that the said Catherine C. Lanahan, the testatrix, was by reason of her last illness incompetent to cancel, revoke, annul, obliterate or alter said last will and testament and the codicils thereto. That the said Jerome Lloyd Unduch left surviving him his said two infant children and his widow, who since remarried and who is the defendant, Aninha C. Livingston." And it prayed "that the action of said N. Charles Burke, executor, in not paying the said legacy of \$25,000 bequeathed to Jerome Lloyd Unduch, be ratified and

confirmed by this honorable court." Upon that petition, after testimony and a hearing, the court decreed "that the legacy of $25,000 bequeathed by said will to Jerome Lloyd Unduch lapsed and therefore the action of N. Charles Burke, executor of said last will and testament and codicils thereto, in not paying said legacy be and the same is hereby ratified and confirmed." From that decree this appeal was taken.

Considering first the application of the statute, there can be no possible doubt that if, between the death of the legatee and the death of Mrs. Lanahan, she was in fact continuously mentally incompetent to execute a valid deed or contract, the statute (chapter 37, Acts 1910), did not apply to the facts of this case.

That act, which at the time of the death of Mrs. Lanahan was in full force and effect, provided: "No devise, legacy or bequest shall lapse or fail of taking effect by reason of the death of any devisee or legatee (actually and specifically named as devisee or legatee, or who is or shall be mentioned, described or in any manner referred to, or designated or identified as devisee or legatee in any will, testament or codicil) in the lifetime of the testator, except as hereinafter provided, but every such devise, legacy or bequest shall have the same effect and operation in law to transfer the right, estate and interest in the property mentioned in such devise or bequest as if such devisee or legatee had survived the testator; provided, however, that this act shall not apply to the last will, testament or codicil of any person dying after the passage of this act, where the maker of said last will, testament or codicil, after the execution thereof and before the death of such devisee or legatee, shall become insane or otherwise incompetent to cancel, revoke, annul, obliterate or alter said last will, testament or codicil." It was repealed and reenacted with amendments by chapter 202 of the Acts of 1920 so as to strike from it the proviso, but, as the rights of all parties to this appeal became fixed and vested at a point of time certainly not later than the death of the testator, they must be determined in accordance with the law as it existed then, and

not in accordance with the law as it existed at some later period. *Bartlett v. Ligon,* 135 Md. 623; *Hemsley v. Hollingsworth,* 119 Md. 431; 36 *Cyc.* 1205, 1210; *Alberston v. Landon,* 42 Conn. 209. And as chapter 37 of the Acts of 1910 expressly provided that it should not apply to "the last will, testament or codicil of any person dying after the passage of this act, where the maker of said last will, testament or codicil, after the execution thereof and before the death of such devisee or legatee, shall become insane or otherwise incompetent to cancel, revoke, annul, obliterate or alter said last will, testament or codicil," the first issue was necessarily one of fact, whether the testatrix, after the execution of the will and the several codicils thereto and before the death of the legatee, became insane or otherwise incompetent to cancel or alter the will or the codicils and remained so continuously to her death. To bring this case within the language of the proviso, appellee was bound to show that the incompetence was continuous from the death of the legatee to the death of the testator. *Bartlett v. Ligon, supra.* To meet that burden it offered one witness, Dr. N. E. Berry Iglehart, who testified that he had attended Mrs. Lanahan for some twelve or fifteen years prior to her death; that during the six weeks preceding her death he saw her every day; that her death was due to a "mycardiac" condition resulting from a chronic kidney disease; that her physical condition affected her mentality to such an extent that during the last six weeks of her life "she was confused as her location, as to where she was. She believed that she was not at home and was making an effort to get home. People did not understand that she ought to have attentions that she thought she was not getting. Those were the principal complaints; very distressing, very wearing; things you cannot relieve. She thought I was some other doctor that had been attending her. She was more or less facetious. She became facetious about things that were serious. That is the sort of mental change takes place where there is (mycardiac) cardiac phychosis or dilemma. * * * With any one in the condition that Mrs. Lanahan was in as

I have described her as being, I should think she was totally unable to attend to any business. I don't think she was of disposing mind"; that "during the nine days preceding her death she had no lucid interval" when he was present; that during that period she was not capable of executing a valid deed or contract; nor competent to cancel, revoke, annul, obliterate or alter "her last will and testament or codicils thereto"; and on his cross-examination he further said: "Were there times when she would realize she was at home and other times that she would not? A. I don't believe in trying to persuade people. She thought she was not at home. She had a confused idea she was at home." She would say, " 'These things are like mine, yes I know they are. You all just don't understand.' Everybody else was mentally mixed, that was the way with her. * * * Doctor, from your knowledge of her condition would you say it was impossible for her to have had a lucid interval during the last nine days? A. Yes. It is my opinion that during the last weeks of her illness it was impossible for the 'grey matter' of her brain to be so changed that she could do anything that was quite normal to her. Q. Do you recollect that at the time of the death of Mr. Lloyd Unduch that the news was kept from Mrs. Lanahan? A. Yes. Q. Was that done on your advice? A. Well, I don't know that I told them they must not tell her. All agreed it should not be done. Q. Doctor, you thought then that it was at least possible that she would have had an understanding of that fact, do you? A. No, it would not have registered with her really as a real fact. She loved Lloyd and talked a good deal about him in her delirium, and I thought it was wise not to bring to her mind in any way the fact of his death."

Mrs. Sallie Carroll Brown, a sister of Mrs. Lanahan, was offered by the appellee as a witness to prove the relationship and pedigree of beneficiaries under the will, but on her cross-examination appellants made her their witness for the purpose of having her testify as to the mental condition of Mrs. Lanahan during the last few weeks preceding her death. In

connection with that inquiry, after stating that from some time in the fall preceding Mrs. Lanahan's death she "was there all the time," Mrs. Brown said she did not think that Mrs. Lanahan during the last two weeks of her life "realized at all what she was doing"; that witness was "attending to the house and to her finances and everything else"; that she, the witness, had been given a power of attorney and signed Mrs. Lanahan's checks; that, although Mrs. Lanahan had some two or three months before given her a book with a list of her benefactions, she did not think she was normal during the last two weeks of her life, that although she was in her own home Mrs. Lanahan "was always wanting to go home and people were leaving her in the road."

The only other witness called in connection with the inquiry into the mental competence of the testatrix during the nine days preceding her death was Victor Wilson, who married her niece, Gertrude Lee Unduch. He testified that the testatrix had failed to recognize him or his wife when they were in the room, and that during the "last week or two" she did not seem to be aware of his presence. He was under the impression that Mrs. Lanahan had lost her vision, although the impression did not seem to be definite, and he did not undertake to qualify Dr. Iglehart's statement that she had not.

This evidence, which is not in any way contradicted, compels the conclusion that, from the death of Jerome Lloyd Unduch until her death, Mrs. Lanahan was continuously mentally incompetent to alter or cancel her will or the codicils thereto, and that therefore the statute upon which appellants rely has no application to the facts of this case.

Dr. Iglehart did not testify as an expert, expressing an opinion upon hypothetical facts, but as a fact witness, to conditions which he had actually observed. He did, it is true, express what in a sense was an opinion, but it was an opinion based upon deductions from symptoms and conditions which he had actually observed, but which were difficult to so describe as to produce a full and accurate picture of what he saw. Such a conclusion, while called an opinion,

has been described as "knowledge at shorthand," and has more of the elements of direct than of opinion evidence. *Baltimore & Yorktown Turnpike Rd. v. Leonhart,* 66 Md. 70; *Weems v. Weems,* 19 Md. 345; *Williams v. Lee,* 47 Md. 326; *Townsend v. Townsend,* 7 Gill, 28. And while such a conclusion will not be received unless accompanied by facts indicating a rational basis for it, when so supported it is regarded as a fact, rather than an opinion. *Townsend v. Townsend, supra.*

The testimony of attending physicians as to the mental condition of a patient with whom they have been closely connected for a substantial period of time, and based upon actual observation of the patient's habits, conduct, symptoms, and physical condition, falls within that classification. *Wagner v. Klein,* 125 Md. 229. And the conclusion of such a witness as to the mental condition of the testator, when shown to have a rational basis, is always competent and often convincing proof of that fact. *Jones v. Collins,* 94 Md. 417; *Crockett v. Davis,* 81 Md. 149. Applying that rule to the testimony of Dr. Iglehart, we have no doubt as to its competence or its value. He had been the attending physician of Mrs. Lanahan for twelve or fifteen years before her death; during the last six weeks of her life he saw her every day; he had observed not only her physical but her mental symptoms; he had noted that she was confused as to her surroundings; that although in bed is her own home, she believed she was not at home, but made efforts "to get home"; that, although she had known him many years, she thought that he was some other physician; that she exhibited the characteristic symptoms of "mycardiac psychosis or dilemma"; that she had no lucid intervals within that period and that she was delirious. Without further prolonging the discussion of this issue, in our opinion these facts were sufficient to support the conclusion of the witness that Mrs. Lanahan was, during the last nine days of her life, mentally incompetent to execute a valid deed or contract. And since that conclusion was not in any way contradicted, it must under the facts of this case be given conclusive force. *Donnelly v. Donnelly,* 156 Md.

81, and cases cited therein; *Frush v. Green,* 86 Md. 516; *Lawson v. Ward,* 153 Md. 94. For, as the only competent and sufficient evidence on that question, it could not be ignored or disregarded, except by an arbitrary abuse of the judicial discretion reposed in this court.

In respect to the second proposition it has been said: "Except, as altered by the statute 1 *Vict.,* ch. 26, secs. 32 and 33, no rule respecting testamentary dispositions is more clearly established, than that by the death of the devisee of real estate, or of the legatee of personalty in the lifetime of the testator, the testamentary disposition fails, or as the expression is 'lapses'." *Roper on Legacies,* page 463. And, except in so far as modified by statute, that is the present law. *Miller on Construction of Wills,* sec. 150; *Fisher v. Wagner,,* 109 Md. 248; *Simmons v. Hill,* 4 H. & McH. 255. There is, however, an exception to that general rule as well settled as the rule itself, and that is that a legacy will not lapse in the event the testator is predeceased by the legatee, if, in the will, he expressed a clear and definite intention to the contrary, and appoints other persons to take in event of the death of the legatee during the lifetime of the testator. *Roper on Legacies,* p. 471; *Woerner, American Law of Administrations,* p. 1467; *Alexander on Wills,* secs. 770, 771. The statement in *Roper on Legacies* that the exception "must be founded upon the manifest intention of testators, that the legacies should not lapse by the death of the legatees before them, and the appointment of other persons to take the legacies upon the happening of those events" is based largely upon Lord Hardwicke's opinion in *Sibley v. Cook,* 3 Atk. 572, where he said: "If a man devises a real estate to J. S. and his heirs, and signifies or indicates his intention, that if J. S. die before him, it should not be a lapsed legacy, yet, unless he had nominated another legatee, the heir at law is not excluded, notwithstanding the testator's declaration. So in the devise of a personal legacy to A. though the testator should shew an intention, that the legacy should not lapse in case A. die before him, yet this is not sufficient to exclude the next of kin." Much the same thing was said in *Elliott v. Davenport,*

1 P. Wms. 86, and that statement has since been so generally followed that it is stated without qualification as the law by current text writers. In *Alexander on Wills,* sec. 771, it is said: "Where the common law rule is in force, it must appear from the face of the will that the intention of the testator was that the legacy or devise should not lapse by reason of the death of the beneficiary before the demise of the testator, in order to avoid the effect of the rule. Such intention must be declared in unequivocal terms, by designating whom the testator wishes to take the gift in case of the death of the beneficiary." To the same effect is *Woerner, American Law of Administration,* sec. 434, where it is said: "The direction that the legacy shall not lapse in case the legatee die before the legacy is payable, is sufficient to prevent the lapse, if some other recipient thereof is pointed out; but the declaration that the devise or bequest shall not lapse does not *per se* prevent such lapse."

While there seems to be no decision in this state directly in point, the reasoning of the court in *Hemsley v. Hollingsworth, supra,* accords with the rule thus defined. For in that case, in stating its conclusion that the Act of 1910 should be given a prospective effect, the court pointed out the harsh and unjust result which would ensue, if it were given a retrospective construction. But the only result of such a construction would have been to effect a lapse of the legacy at common law upon the principle that to save the legacy the testatrix was bound in her will to manifest an intention that it should not lapse, which she did not do. And in *Bartlett v. Ligon,* 135 Md. 623, there is an expression to the same effect.

Turning to the facts of this case, there is not to be found in the will of Mrs. Lanahan or of the codicils thereto the slightest evidence that she did not intend the legacy to Jerome Lloyd Unduch to lapse if he died during her life at a time when for any reason she was incompetent to revoke or cancel her will or the codicils thereto, but such inferences as those instruments permit are to the contrary. The item referring to the legacy to him was in this language: "Twenty-five thou-

sand dollars ($25,000) I give and bequeath absolutely to Jerome Lloyd Unduch." In addition to that legacy, in almost identical words she bequeathed $25,000 each to Harry de Chantel Carroll and Thomas M. Carroll, both of whom predeceased her, and in each of those cases she revoked the legacy, and directed that it should fall into and become a part of her residuary estate. So far as that course of conduct permits any inference at all, it is that the testatrix, in the event that the persons to whom she had bequeathed pecuniary legacies predeceased her, intended to cancel them, and make some other disposition of the sums bequeathed. But aside from that, she was advised by able and experienced counsel, and she must have known, that if for any reason she became incompetent to cancel, revoke, obliterate, or alter her will, that the legacies would lapse unless she expressed an intention to the contrary. *Bartlett v. Ligon, supra,* 626; *Hemsley v. Hollingsworth, supra,* 440. A very ingenious argument is presented by appellants, in which they seek to infer, from what the testatrix did not say rather than from what she did say, that she did not intend the legacy to lapse. But such an inference is the precise converse of the law, which is that if she had intended that the legacy should not lapse it was necessary for the testatrix to have expressed that intention either in the will or the codicils thereto, and to have appointed some person to take it in the event of the death of the legatee in her lifetime.

It is also sought to deduce a specific intent that the legacy should not lapse from the general policy of the testatrix in disposing of her estate so as to benefit equally those having claims upon her bounty. But such an inference is too fragile and remote for serious consideration. For, as stated in *Alexander on Wills,* sec. 771: "To prevent a legacy from lapsing, the testator must declare, either expressly or in terms from which his intention can be with sufficient clearness collected, what person he intended to substitute for a legatee who may die in his lifetime. For it will only be presumed that the testator contemplated a failure of his gift and made provi-

sion for lapse when there is a clear intimation to that effect. A legacy is not to be saved from lapse by the fact that the testator knew of the death of the legatee and intended that his children should receive the benefit in his stead, unless it was so provided in the will or a codicil thereto. If a legatee be dead at the time the will is made, and no words substituting his issue be used, the legacy will lapse, whether the testator knew of the death or not."

And, since we have found nothing in the will or the codicils under consideration sufficient in our judgment to show any intention on the part of the testatrix that the legacy to Jerome Lloyd Unduch should not lapse, we fully concur in the opinion of the learned chancellor who had the case below, and the decree appealed from will be affirmed.

*Decree affirmed, with costs.*