ABEL C. CAMERON, ET AL. *v.* LIDIE B. FRAZER, ET AL.

[No. 34, October Term, 1946.]

*Decided December 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*James W. Hughes,* with whom was *E. D. E. Rollins* on the brief, for the appellants.

*George W. Constable* and *John D. Alexander,* with whom was *James F. Evans* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the defendants from a decree construing the will of William Evans Frazier.

The facts and circumstances that might reflect the testator's intention, as expressed in his will, are meager.

The testator executed his will on March 31, 1941, when he was 68. He died April 12, 1945, at the age of 72. For

38 years he had lived alone on the Home or Mill property, near Earleville in Cecil County. The property consisted of 15 or 16 acres of land, on which were a grist mill, a tenant house and a stable. The tenant house was rented. Some years before 1941 the testator had operated the mill. The property adjoined a 100-acre mill pond, which the testator (after ceasing to operate the mill) used in connection with his business of renting boats and fishing equipment.

He had partitioned off about a quarter of the mill building into two first floor and one second floor rooms. He cooked and lived in one of the first-floor rooms and used the other for storage. He slept in the second floor room. The rest of the building he used to store boats, and in season rented as sleeping quarters for fishermen who came to his place. He also rented boats and fishing tackle. He called the place Camp Frazier.

The real estate, including buildings, was worth about $2,000 at the time of his death. The furniture "in his apartment" was worth between $200 and $300. In the mill building were stored 8 rowboats, 40 cots, bed clothing, ropes, shovels, tools, a cart or two and some mill equipment, including old burrs, some fly wheels and axles and "things like that," not worth over $300. Outside the mill building were a horse, some shovels, concrete machinery, cut locust posts and other farm machinery, worth $200 to $300. This real and personal property may have advanced a little in value between the making of the will and the testator's death.

Testator's next of kin were a brother, a sister and two nephews. Another brother, named in his will, predeceased him. After testator's death his brother found in a drawer in a desk in the living and cooking room $13,300 face amount of United States Savings Bonds, the first purchased in March, 1942, the last in March, 1945, all worth about $10,000 at the time of his death. The other drawers in the desk were empty but this drawer contained, in addition to the bonds, old letters, a Spanish-American War Army discharge, his check book and in-

surance policies, tied in a bundle without wrapper or envelope. No other securities were found, so far as witness was aware, but as he turned over the bonds and other papers to the Cecilton Bank he did not examine them too carefully. On top of the desk was a basket which had in it some old trinkets such as sun glasses and the like. Testator used the flat top of the desk as a dining table. In this room he had a variety of personal belongings and two cook stoves, and some kitchen equipment, such as a can opener and a knife.

It was stipulated that the value of the whole estate, real and personal (including the bonds), was about $15,000 at the time of his death, *i. e.*, about $2,100 to $2,300 more than the bonds, real estate and tangible personalty above mentioned. There is no evidence as to the value of any other real estate or securities, or the amount he had in bank, at the time of his death or when he made his will, or how he purchased the bonds, whether by sale of other securities, out of money in bank, or out of cash in the house, or that he ever had a safe deposit box.

His will was first written in his own handwriting and taken to Elkton to the Elkton Banking & Trust Company, where it was typewritten, signed and witnessed. Item First directs payment of debts and funeral expenses. Item Second, the clause now in question, provides: "I give and bequeath to the Union Hospital of Cecil County, Maryland, my home property located at Earleville, Maryland, including all furniture therein and other personal property located on the premises." Item Third gives to the Zion M. E. Church of Cecilton "all cash in the Cecilton Bank of the Elkton Banking and Trust Company, located at Cecilton, in my name." Item Fourth gives to St. Paul M. E. Church, near Earleville, "Certificate of Beneficial Interest No. 2915 of the Cecil Mortgage and Certificate Corporation registered in my name." Item Fifth gives and bequeaths "My property at Fredericktown, Maryland, to the Holiness Christian Church." Item Sixth gives and bequeaths "my property at Hack's Point,

Maryland," to his brothers, sister and nephews (naming them), "share and share alike." Item Seventh gives "the fifty-six shares of the capital stock of the Elkton Banking and Trust Company of Maryland owned by me to the Home for Friendless Children of the Eastern Shore." Item Eighth appoints as executors "the President of the Union Hospital of Cecil County, Maryland, and the Pastor of the Zion M. E. Church of Cecilton, Maryland, whoever they may be at the time of my decease, same to serve without compensation."

In a careful, well-reasoned opinion the lower court held that as to the bonds the testator died intestate, there being no residuary clause under which they could pass. From a decree in accordance with the opinion the Union Hospital and the executor appeal.

The appellants invoke (1) the cardinal principle that the intention of the testator must govern, if it can be determined from the will as a whole and is not contrary to law and (2) the rule that the law favors testacy rather than intestacy, and contend (3) that the language of Item Second is all-inclusive, and discloses an intention to give all property, both real and personal, "located on the premises."

The principle and the rule invoked are fundamental, but the intention must be found in the will and in pertinent surrounding circumstances, and the presumption against intestacy arises more especially when the will contains a residuary clause and it must always be in harmony with the will as it is. *Phillips v. Taylor,* 148 Md. 157, 164, 129 A. 18; *Miller on Construction of Wills,* Secs. 157, 158. The court must choose been two constructions consistent with the words of the will, but cannot write a new will. *Perkins v. Iglehart,* 183 Md. 520, 527, 528, 39 A. 2d 672. Moreover it is not unheard of to make a will to dispose of particular property and to leave the rest for distribution under the law. *Lyon v. Safe Deposit & Trust Co.,* 120 Md. 514, 525, 87 A. 1089; *Albert v. Safe Deposit & Trust Co.,* 132 Md. 104, 109, 103 A. 130; *Abell v. Abell,* 75 Md. 44, 63, 23 A. 71, 25 A. 389.

The testator could not have had a specific intention to give the bonds to the hospital, as he did not own any of them when he made the will. Nevertheless he could, if he had chosen to do so, have given all the contents of a house or a desk at the time of his death, though courts which have affirmed this right have mentioned the danger of making a will in this way. *Matter of Thompson,* 217 N. Y. 111, 115, 116, 111 N. E. 762; *In re Robson,* 1891, 2 Ch. 559, 563. It is also true that the words "all my personal property," without any limiting context, may be all-inclusive; they may include personal property of every kind, tangible or intangible, goods and chattels or choses in action, owned when the will is made or thereafter acquired. *Dalrymple v. Gamble,* 68 Md. 523, 13 A. 156.

But this testator did not use the words "all my personal property" without any limiting context. *Frick v. Frick,* 82 Md. 218, 222, 223, 33 A. 462. He said "my home property *located* at Earleville, Maryland, including all *furniture* therein and *other* personal property *located on the premises.*" (Italics supplied.) These limiting words, like the horse, implements and other goods and chattels covered by them, are of the earth, earthy. They suggest tangible property, goods and chattels, which have a "local habitation," not securities or other choses in action, especially when securities and choses in action are specifically bequeathed in three subsequent items and the value of the bonds is two-thirds of the entire estate, real and personal, and more than three times the value of the "home property" and all the tangible personalty thereon. It seems hardly conceivable that he could have intended to dispose of the greater part of his estate in this way. He must have known that anything not disposed of by will would go to his nearest relations. He made a small specific provision for them by will. He may have intended, when he made his will or when he bought the bonds, to make a much larger provision for them by leaving a large part of his estate undisposed of by will.

This view is in accord with authorities in other jurisdictions. All rules and generalizations are subject to

exceptions when the will shows a contrary intent on the testator's part. In most cases, however, the words "personal property" are limited to tangible property or goods and chattels either (1) when the context makes the rule *ejusdem generis* applicable or (2) when description by location, *e. g.*, the contents of a house, exclude choses in action, which have no location. In such circumstances money in some cases is included as "personal property" or even "tangible personal property" contained in a house, but not bonds, securities, savings bank books or other choses in action. *Bopham v. Aylesbury,* 1 Ambler 68; *Perea v. Barela,* 5 N. M. 457, 458, 23 P. 766; *Walton v. Melton,* 184 Va. 111, 34 S. E. 2d 129, 162 A. L. R. 1127; see note, 32 *Virginia Law Review,* 201-205; *contra* as to money (*i. e.,* not included) *Quick v. Owens,* 198 S. C. 29, 15 S. E. 2d 837, 137 A. L. R. 201. In some cases a distinction is made between contents of a house and contents of a receptacle, *e. g.*, a desk or a safe deposit box, in which securities usually are kept. *Old Colony Trust Co. v. Hale,* 302 Mass. 68, 18 N. E. 2d 432, 120 A. L. R. 1207. It is, however, generally held that words such as "furniture and other personal property," when the rule *ejusdem generis* is applicable, or "personal property located in my house," do not include bonds or other securities or choses in action. In *Bryant v. Bryant,* 129 Me. 251, 151 A. 429, 431, a bequest to a wife of "my homestead place * * * and all of the household furniture and all other personal property belonging to me in the home" was held not to include Liberty Bonds. The court remarked that the expression "personal property" is "ordinarily and popularly used" in the more restricted sense "embracing only goods and chattels." 129 Me. 257, 151 A. 432. See also cases cited in *Page on Wills,* 3rd (Lifetime) Ed., Secs. 964, 970, and in notes, 120 *A. L. R.* 1210, 1214, 1215; 137 *A. L. R.* 212, 218, 219; 162 *A. L. R.* 1134; *contra Winkler v. Woodruff,* Del. Ch. 182 A. 409.

> *Decree affirmed; costs to be paid out of the estate.*