595 A.2d 484

**Fannie C. HAYS, Individually, etc.**

v.

**Evelyn J. COE, et al.**

**No. 1611, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Sept. 11, 1991.

Christopher Joliet and Alex Bognar, Hagerstown, for appellant.

Charles F. Wagaman, Jr., Hagerstown, for appellees.

Argued before MOYLAN, WENNER and MOTZ, JJ.

MOTZ, Judge.

The central question presented by this case is whether equitable conversion should be applied to proceeds from the sale of real estate, which a decedent contracted to sell before his death, but which was not sold until after his death. After a court trial, the Circuit Court for Washington County found that the "doctrine of equitable conversion" was not "applicable in this case." We reverse.

## FACTS

On December 29, 1979 decedent, Gail A. Lewis, executed a will which provided in pertinent part:

SECOND: Unto Fannie C. Hays, I give *all of my personal property, including but not limited to all furniture and fixtures in my residential home, any motor vehicles which I may own and any monies which I may have at the time of my death.* Also, unto the said Fannie C. Hays, I give and devise a life estate in and for the term of her life, in and to a parcel of real estate located in the Hauver's Election District of Frederick County, Maryland, improved with a residential home, containing 8 acres, more or less, and being all and the same parcel of real estate shown and described as parcel # 1 in a deed dated December 6th, 1952 from Roscoe G. Wolfe, et al., unto Gail A. Lewis and wife, said deed being recorded in Liber 518, folio 538, among the Land Records of Frederick County, Maryland. The interest of the said Evelyn A. Lewis having been conveyed unto Gail A. Lewis, by deed dated August 30th, 1978.

THIRD: All of the rest, residue and remainder of my estate, I give unto my children equally.

(Emphasis supplied).

On March 22, 1988 Mr. Lewis entered into a contract to sell certain real property (which was all of the real property he then owned) for $100,000 with settlement to occur on or before June 1, 1988. At that time the buyers paid Mr. Lewis $1,000 earnest money. On May 27, 1988 Mr. Lewis and the buyers executed an addendum to this contract which provided as follows:

Because a title problem has arisen and a complete survey is necessary, we hereby extend this contract until a good and marketable title can be transferred.

Mr. Lewis died on June 19, 1988 before the real estate sale could be consummated.

On November 16, 1988, appellant Fannie C. Hays (Ms. Hays), personal representative of the decedent, settled on this property, as provided in the March 1988 contract. Several months later, Ms. Hays filed the First and Final Administration Account in decedent's estate in which she showed distribution of the proceeds from the sale of this

real estate to herself, as personalty "under the Rule of Equitable Conversion." The decedent's children, appellees Evelyn J. Coe, Martha L. Wolfe, Gail R. Lewis and Basil E. Lewis (the Children) excepted to this Administration Account.

On August 11, 1989, the Children filed a Complaint for Construction of Will in the Circuit Court for Washington County. They alleged that Ms. Hays had misconstrued the will, and that the proceeds from the sale of the decedent's real estate should be treated as realty rather than as personalty. The construction urged by the Children would mean that these proceeds would be distributed to the Children as residuary legatees, rather then to Ms. Hays, a specific legatee entitled only to the decedent's personal property. Ms. Hays answered and the case was tried on August 16, 1990.

At the conclusion of the trial, the circuit judge issued an oral opinion finding that "the doctrine of equitable conversion" was not "applicable to this case." He reasoned:

> [W]hile I understand the doctrine of equitable conversion, I don't believe that it is applicable in this case because I don't believe that at the time of Mr. Lewis's death that the conversion contemplated is necessarily [sic] can operate to defeat the clear language of the Will or that it in fact took place because of the cloud that existed at the time.

Accordingly, the trial court ordered that the proceeds of the sale of decedent's real estate be treated as real estate and distributed to the Children as residuary legatees.

Ms. Hays appeals, claiming reversal is required because the circuit court erred in "not applying the doctrine of equitable conversion" to the proceeds of the real estate and erred by "applying the rule against perpetuities" to the real estate contract. The Children counter that the circuit court was correct in refusing to apply the doctrine of equitable conversion; they concede that the rule against perpetuities was not violated here but maintain that the circuit court

never held that it was. The Children claim that the lower court's only error was refusing to admit certain evidence designed to show the intention of the decedent at the time he executed the will.

## LEGAL ANALYSIS

### (1)

■ The initial issue presented by this case was not directly addressed by the parties or the circuit court. That is: what is the meaning of decedent's bequest to Ms. Hays of "all of my personal property, including but not limited to all furniture and fixtures in my residential home, any motor vehicles which I may own and any monies which I may have at the time of my death."

If only tangible personal property is included within this bequest, the Children, as residuary legatees, are entitled to the proceeds from the sale of the real estate regardless of our decision as to other issues. This is so because the decedent's contract for the sale of the real estate is a chose in action. *Unkle v. Unkle*, 305 Md. 587, 595, 505 A.2d 849, 853 (1986) (a chose in action is a personal right not reduced to possession but recoverable by a suit at law); *see also, In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424, 427 (1980) (chose in action includes right to receive contract payments under a contract for the sale of real property); 63A Am.Jur. 2d, *Property* §§ 22–26 (1984). Choses in action constitute intangible, rather than tangible, personal property. *See* 73 C.J.S.2d, *Property* § 15 (1983).

Thus, our first inquiry is whether decedent devised to Ms. Hays all tangible and intangible personal property or only all tangible personal property. Although language identical to that involved here has never been construed by a Maryland court, the Court of Appeals has dealt with this issue when construing other testamentary language.

That Court has expressly held that when a testator devises "all of my personal property," without any qualification or limitation, *all* personal property—both tangible and in-

tangible—is devised. *Emmert v. Hearn,* 309 Md. 19, 28, 522 A.2d 377, 382 (1987). The Court explained:

> In construing a will, the paramount concern of the court is to ascertain and effectuate the testator's expressed intent. The testator's intent must ordinarily be gathered from the four corners of the will, with the words of the will given their "plain meaning and import." However, words having legal significance will be construed in that sense unless the will clearly indicates otherwise.

*Id.* at 23, 522 A.2d at 379–80 (citations omitted). After examining both the ordinary and legal definitions of "personal property," the Court found "there is no distinction between the ordinary and legal meaning of 'personal property,' both of which encompass tangible and intangible property." *Id.* at 24, 522 A.2d at 380. Moreover, the *Emmert* Court directed, "absent some indication from the will to the contrary, bequests of 'personal property' are to be construed broadly." *Id.*

The language, analysis and result in *Emmert* can be contrasted to that in *LeRoy v. Kirk,* 262 Md. 276, 278, 277 A.2d 611, 612 (1971), and *Cameron v. Frazer,* 187 Md. 368, 371, 50 A.2d 243, 244–45 (1946). In *LeRoy,* the testator bequeathed "all of my personal property, including my automobile, boat and the contents of my house and outbuildings." The Court found that because the testator followed the bequest of "all of my personal property" with a list of specific tangible articles of personal property he, by example, had restricted the bequest to tangible personal property. *LeRoy,* 262 Md. at 283, 277 A.2d at 614–15 ("specificity of example narrowed the generality of the term 'personal property.'") The *LeRoy* Court reasoned:

> It is true that a bequest of "personal property" without more includes every form of personal property, tangible and intangible, from whatever source derived, that is everything except real estate. It is equally true, however, that the broad scope of the words "personal property" standing alone is limited by the rule that "if there be anything in any part of the will which restricts or quali-

fies the general term, the latter must be so restricted and qualified, if it can be done without violating some other principle of law or the manifest intention of the testator." *Id.* at 281, 277 A.2d at 613 (citations omitted).

Similarly, in *Cameron v. Frazer*, 187 Md. 368, 373, 50 A.2d 243, 245–46 (1946), when the testator provided that "my home property ... including all furniture therein and other personal property located on the premises" was bequeathed to the Union Hospital, the Court held that the hospital was not entitled to certain bonds found in the home property. The Court explained that generally the words "personal property are limited to tangible property" when "(1) the context makes the rule *ejusdem generis* applicable or (2) when description by location, *e.g.*, the contents of a house, exclude choses in action, which have no location." *Id.* at 374, 50 A.2d at 246.

Here, of course, the decedent did not limit his bequest in the ways described in *Frazer* or *LeRoy*. Nor did he make a totally unqualified bequest, like that discussed in *Emmert.* We believe, however, that the language he did use, particularly in light of the *Emmert* Court's direction that "bequests of 'personal property,'" absent an indication in the will to the contrary, are to be construed "broadly," 309 Md. at 24, 522 A.2d at 380, demonstrates an intent to leave Ms. Hays all of his personal property—both tangible and intangible. We reach this conclusion for two reasons.

The first is based on the fact that the decedent here provided that Ms. Hays was to receive all of his personal property "including *but not limited to* " certain items. It is well recognized that the term "including" standing alone may "be used as a word of enlargement" or, as it was interpreted in *LeRoy,* as "a word of limitation." *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 397, 488 A.2d 486, 493 (1986) *citing Black's Law Dictionary* (5th ed. 1979). *See also St. Louis County v. State Highway Comm'n*, 409 S.W.2d 149, 153 (1966) ("including" in will usually interpreted as word of enlargement); *Sims v. Moore*, 288 Ala. 630, 264 So.2d 484, 487

(1972); (same); *In re Johnson's Estate,* 5 Cal.App.3d 173, 84 Cal.Rptr. 914, 918 (1970) (same).[1] The phrase, the decedent used here, "including but not limited to," however, has almost universally been viewed by courts as being expansive, rather than limiting. *See e.g., State v. Apex Steel & Supply Co.,* 176 Ind.App. 187, 375 N.E.2d 598, 601 (1978) (taxing statute); *Hartford Fire Ins. Co. v. Spreen,* 343 So.2d 649, 652 (Fla.App.1977) (insurance contract); *Home Indemnity Co. v. Battey Machinery Co.,* 109 Ga.App. 322, 136 S.E.2d 193, 195 (1964) (statute defining subcontractor). In common parlance, this phrase is also viewed as expansive, rather than limiting. Thus, here, as in *Emmert,* there seems to be "no distinction between the ordinary and legal meaning" of the words to be construed, and as in *Emmert,* the words "encompass tangible and intangible personal property."

This conclusion is reinforced by closer examination of the items specifically listed as examples of what the bequest included but was not limited to, *i.e.,* "all furniture and fixtures, in my residential home, any motor vehicles which I may own and any monies which I may have at the time of my death." The "furniture," "fixtures," and "motor vehicles" are certainly tangible personal property; however, money, like bank deposits, shares of stock and evidences of debt, is generally recognized to be intangible personal property. *See Cannon v. First Natl. Bank of Atlanta,* 237 Ga. 562, 229 S.E.2d 361, 363 (1976); *People v. Goldfogle,* 234 N.Y. 345, 137 N.E. 611, 612 (1922), *cert. denied,* 261 U.S. 620, 43 S.Ct. 432, 67 L.Ed. 830 (1923); *Estate of McKenna,* 340 Pa.Super. 105, 489 A.2d 862, 866 (1985). Indeed, one of the items of intangible personal property which *LeRoy* held did *not* pass to the specific legatee was "cash in banks."

---

**1.** We note that the General Assembly has specifically provided in its Rules of Interpretation of the Maryland Code that:
> The words "includes" or "including" mean, unless the context requires otherwise, includes or including by way of illustration and not by way of limitation.

Md.Ann.Code art. 1, § 30 (1990).

*See LeRoy v. Kirk,* 262 Md. at 279, 277 A.2d at 613. Accordingly, among the items the testator bequeathed to Ms. Hays were items of tangible personal property *and* at least one form of intangible personal property. Unlike *LeRoy,* 262 Md. at 283, 277 A.2d at 614, there can be no claim here that the "specificity of the example narrowed the generality of the term 'personal property,'" because here the examples included items of *both* tangible and intangible personal property.

Thus, we believe that the decedent did bequeath to Ms. Hays all personal property—both tangible and intangible.

(2)

The next inquiry is whether, because of equitable conversion, the proceeds from the sale of real estate which decedent contracted to sell prior to his death, but which was not sold until after his death, should be regarded as personal or real property. If the former, the proceeds will pass to Ms. Hays, if the latter, to his Children as residuary legatees. The Court of Appeals has explained the doctrine of equitable conversion as follows:

> [W]hen the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money.... Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.

*Himmighoefer v. Medallion Industries, Inc.,* 302 Md. 270, 278, 487 A.2d 282, 286 (1985), *quoting* 8A Thompson, *Real Property,* § 4447 at 273–74 (Grimes Replacement Vol. 1963). Because the conversion occurs as soon as a contract for the sale of land is entered into, "if a seller dies before the contract is executed, the legal title to the property passes as real estate but his interest in the purchase money passes as personal property." *In re Estate of Jesseman,* 121 N.H. 313, 429 A.2d 1036, 1037 (1981). *See also In re*

*Estate of Sweet,* 254 So.2d 562, 563 (Fla.App.1971), *cert. denied,* 259 So.2d 717 (Fla.1972).

The circuit court, nevertheless, found the doctrine of equitable conversion not "applicable" here. Although the rationale for this finding is not entirely clear, it seems to have concluded that the doctrine was inapplicable for two reasons: (a) equitable conversion would "defeat the clear language of the will" and (b) the real estate contract was unenforceable "because of the cloud that existed at that time"—presumably a violation of the rule against perpetuities—and so an equitable conversion could not be triggered. The trial judge's explanation for the basis for his ruling is the following:

> I think it's the clear intent of the language that the residuary clause was to pass the fee of the real estate to Mr. Lewis's children and that, while there were events in motion at the time of his death which might have defeated that residuary bequest, that had not taken or had come into ... had not come into effect at the time of his death; and so that it's the holding of this Court that the proceeds represented from the sale of this real estate should pass to the children under the Third Paragraph of the Will and so Ordered.

We will address both of the trial court's stated reasons.[2]

### (a) *Equitable Conversion Will Not Defeat the Language of the Will*

■ The will sets forth: (1) a bequest by the testator to Ms. Hays using language which we have held above indi-

---

**2.** The Children vigorously maintain that the trial court's decision is based entirely on the first reason stated above and that the rule against perpetuities was neither argued to, nor relied upon, by the court below. *See* Brief of Appellee at 7–9 ("nowhere in the Extract is there one word of argument for counsel for Appellant or Appellee or discussion by the trial court of any interests being ... invalid ... because of ... violation of the Rule Against Perpetuities.... Thus the question ... is outside the scope of review permitted by the Md. Rules.") This may be so; however, there appears to be no other basis for the lower court's conclusion that he did not "believe" that "at the

cates his intent to give to her all of his tangible *and* intangible personal property, and (2) a standard residuary clause which provides: "All of the rest, residue and remainder of my estate, I give to my children, equally." None of this language would be "defeat[ed]" by the application of the doctrine of equitable conversion.

The language here is very different from that in *Frick v. Frick*, 82 Md. 218, 220, 33 A. 462, 463 (1895), upon which the Children rely.[3] There the testator: (1) bequeathed successive life estates in the home property to his wife and their daughter, Lillian, (2) left Lillian all of his personal property, (3) expressly stated that his wife and Lillian were not to share in the "balance of my estate" and (4) directed that the "balance" of his estate be divided among his other eight children. *Id.* When the testator died he had contracted to sell a farm and had accepted a $1200 note in consideration for the sale. Lillian claimed the proceeds of the note as personal property and the other siblings claimed it as part of the "balance of the estate."

---

time of Mr. Lewis' death ... the conversion ... in fact took place because of the cloud that existed at that time." Since appellant Hays apparently believes the rule against perpetuities was the basis for the decision of the court below and since consideration of this theory will only benefit the Children—providing another basis for the decision below—we will consider it.

3. For reasons difficult to discern, the Children also heavily rely on a parenthetical sentence in *LeRoy v. Kirk*, 262 Md. at 279, 277 A.2d at 612, in making their argument that equitable conversion is improper here. There, as discussed previously, the Court held that a specific legatee's bequest was limited to tangible personal property, like that listed in the will, and not stocks and cash. The *LeRoy* Court noted:

If Mrs. LeRoy [the specific legatee] is right, she would get the entire net estate, since at the time of [the testator's] death she owned *no* real property and the charities would get nothing. (At the argument Mrs. LeRoy's lawyer said she renounced any claim to the $65,000 proceeds of the sale of the home property, by what logic or process of reasoning we were not advised and are unable to perceive.)

*Id.* Rather than assisting the Children, this parenthetical strongly suggests that the Court of Appeals believed that if the beneficiary had been entitled to intangible, as well as tangible, personal property, (as Ms. Hays is) the doctrine of equitable conversion would indeed have given her a right to the proceeds from the sale of real estate.

The *Frick* Court rightly recognized that the language of the will, taken as a whole, was ambiguous and examined extrinsic evidence to determine the meaning intended. 82 Md. at 225, 33 A. at 464. That evidence was that the testator had entered into the contract to sell the farm less than two months *before* he executed his will and the contract for the sale of the farm expressly provided that the buyer was to pay the purchase price *after* the death of the testator to the "heirs according" to the father's will. *Id.* at 226, 33 A. at 465. Thus, the *Frick* Court found that because the "agreement was in existence when the will was made ... the conclusion is irresistible that this was the property referred to in the will as 'the balance of my estate ...'" *Id.* Accordingly, the Court found that even if there was a "technical equitable conversion of the land into personalty by the agreement of sale, it is evident that the testator did not regard it as disposed of by the previous clause in his will and that it was his intention to exclude his daughter Lillian from any share in the farm or the proceeds of the sale thereof." 82 Md. at 227, 33 A. at 465.

Here, in contrast, the language used, like that in *Emmert v. Hearn*, 309 Md. at 26, 522 A.2d at 381, is "unambiguous on its face." There is no "balance of my estate" language, nor is there any mandate that a specific legatee is not to share in the "balance" of the estate. *Id.* Rather, here, as in *Emmert*, the standard residuary clause does no more than "insure the testator will not die intestate as to any possible portion of the estate." *Id.* Since the language of the will is not ambiguous, there is no need to construe it and no need to examine extrinsic evidence. *See Fersinger v. Martin*, 183 Md. 135, 138, 36 A.2d 716, 718 (1944).[4]

---

**4.** The court below apparently recognized this and excluded most extrinsic evidence. This extrinsic evidence is, however, contained in the record herein because the Children claim its exclusion was error. *See infra* part 3. This evidence, unlike that in *Frick*, indicates that here: (a) the decedent contracted to sell the real estate in question not two months *before* he executed his will, as in *Frick*, but nine years *after* executing it, (b) he had sold other real estate, the proceeds to

The theory at the heart of the Children's claim is that a court should determine a testator's intent by examining the circumstances, including the testator's assets, at the time the testator executed the will, rather than merely examining the language of the will. This argument was rejected by the Court of Appeals more than a hundred years ago. *Dalrymple v. Gamble,* 68 Md. 523, 13 A. 156 (1889). In *Dalrymple,* a testator executed a will in August 1881, devising his ranch, other real property, and all his personal property to a Ms. Hatch. Between the date of execution of the will and his death in November 1881, the testator's brother died, leaving testator approximately $30,000. The testator's siblings claimed Ms. Hatch was not entitled to the additional $30,000 since the testator had not inherited the money when he executed his will and so could *not have intended* to bequeath it to her. (This is markedly similar to the assertion of the Children that Ms. Hays is not entitled to the proceeds from the sale of the real estate because, at the time the decedent executed his will, that asset was not personal property and so the decedent could not have intended to bequeath it to Ms. Hays when giving her "all my personal property.") The *Dalrymple* Court flatly rejected this theory, finding that the words of the will were plain and "where the meaning of the language of the will is plain, the court of construction does not go outside to discover what the testator intended." *Id.* at 531, 13 A. at 160.

The court below was correct in finding the language of the will "clear;" it erred, however, in finding that "equitable conversion would defeat" this clear language.

(b) *The Contract Does Not Violate the Rule Against Perpetuities and is Specifically Enforceable*

█ In order for equitable conversion to occur, a contract must be valid and binding so that a court of equity could

---

which the Children make no claim, a year after executing the will, and (c) again unlike *Frick,* there is no language in the real estate contract directing that the proceeds from the sale be paid to his heirs as set forth in his will. Thus, even if extrinsic evidence was considered here, it would not assist the Children.

specifically enforce it if asked to do so. *Birckner v. Tilch,* 179 Md. 314, 323, 18 A.2d 222, 226, *cert. denied,* 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 509 (1941). Thus, if the real estate sales contract here was not specifically enforceable because it violated the rule against perpetuities, or was, for some other reason, indefinite, then the equitable conversion doctrine would be inapplicable to it. As noted above, no claim has been made that the contract was barred by the rule against perpetuities or was, for some other reason, not specifically enforceable. Moreover, the Children, in this Court, have specifically disavowed any reliance on this claim. It does appear, however, to be a basis for the lower court's holding, and so we address it.

■ There is nothing indefinite or even arguably violative of the rule against perpetuities in the contract itself. The May addendum to it, however, provided that:

Because a title problem has arisen and a complete survey is necessary, we hereby extend this contract until a good and marketable title can be transferred.

*Stewart v. Tuli,* 82 Md.App. 726, 573 A.2d 109 (1990) is directly on point in determining whether this addendum violates the rule against perpetuities. There a contract addendum provided that if a previous prospective buyer attempted to keep "his contract alive," the new buyers did not have to go to settlement until such time as clear title could be conveyed by the seller. *Id.* at 729, 573 A.2d at 110. In *Stewart,* we held that even though nothing in the addendum fixed the time for obtaining good title, the addendum did not violate the rule against perpetuities. *Id.* at 736, 573 A.2d at 113. We reasoned:

[T]he parties contemplated and the contract mandated that any title clearing litigation be completed within a reasonable period of time. It would be ridiculous to suggest that a reasonable period of time would exceed a life in being and 21 years.

*Id. Compare, Dorado Ltd. Partnership v. Broadneck Dev. Corp.,* 317 Md. 148, 158–59, 562 A.2d 757, 762 (1989)

(no reasonableness requirement read into contract because contract settlement was dependent on the action of third party rather than one of the parties to the contract.) We note that in *Stewart* there is language in the addendum specifically providing that if action had to be taken to clear title, that action "must be taken promptly," *Stewart*, 82 Md.App. at 735, 573 A.2d at 113, which is not present in this case. This clause, however, was not critical to our reasoning in *Stewart* and other courts have implied reasonable timeliness without such language. *See e.g., Read v. GHDC*, 254 Ga. 706, 334 S.E.2d 165, 166 (1985); *Byke Construction Co. v. Miller*, 140 Ariz. 57, 680 P.2d 193, 195 (1984). Accordingly, even without an express contractual directive that action to clear title "must be taken promptly," we believe that the *Stewart* rationale is applicable, and the addendum here does not violate the rule against perpetuities.

Similarly, we believe that the addendum does not make this contract indefinite and unenforceable for some reason other than the rule. The only arguable infirmity is lack of definite time for consummation of the contract. *Caplan v. Buckner*, 123 Md. 590, 91 A. 481 (1914) is instructive on this issue. In *Caplan*, a contract for sale of land showed that the seller did not have a clear and unencumbered title at the time of the contract, but was to acquire it, and then convey a clear title. No time was given for the consummation of the contract. The *Caplan* Court held that it would presume that a reasonable time was meant and that the contract was specifically enforceable, even though the Court had to read this element into the contract. *Id.* at 601–02, 91 A. at 485. That rationale is equally applicable here.

### (3)

The only remaining issue is the Children's claim that certain extrinsic evidence should have been admitted by the trial judge. As noted within, because the language of the will was clear, the circuit court was correct in refusing to admit extrinsic evidence. *See Fersinger v. Martin, supra,*

183 Md. at 138, 36 A.2d at 718.   Moreover, as also noted within, even if that evidence had been considered, it would not change the result here.

JUDGMENT REVERSED.   COSTS TO BE PAID BY APPELLEES.