708 A.2d 12

Melvin BROWN

v.

Thomas PARRAN, III.

No. 1188, Sept. Term, 1997.

Court of Special Appeals of Maryland.

April 6, 1998.

654

Martin C. Dennis, Dunkirk, for appellant.

Tracey A. Spigai (Laurence W.B. Cumberland and Cumberland & Erly, L.L.C., on the brief), Prince Frederick, for appellee.

Argued before EYLER and SONNER, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

EYLER, Judge.

This case requires us to decide whether a contract for the sale of real property violates the Rule Against Perpetuities. We hold that it does not and reverse the judgment of the trial court.

## Facts

On August 29, 1995, Melvin Brown, appellant, met with Thomas Parran, III, appellee, at appellee's house to discuss the purchase of certain real property owned by appellee. At the conclusion of those discussions, an agreement was prepared, handwritten by Virginia Brown, appellant's wife, also in attendance at the meeting,[1] and appellant and appellee signed it. The document provided for the sale of 25 acres of land by appellee to appellant at $10,000 per acre for a total price of $250,000. It provided for a down payment by January 19, 1996, in the amount of $150,000, with the remaining $100,000 to be "financed" over a 10–year period at 6% interest. The

---

1. There were minor handwritten additions by appellee.

document also stated that the sale was subject to "percolation tests 21 bldg. sites & permits approval." [2]

Subsequently, appellant proceeded with arrangements for percolation tests and surveying, with the concurrence of appellee. Appellant also consulted with a bank with respect to obtaining a loan in the amount of $150,000. Appellant testified that, as a result of discussions with the bank, he requested his lawyer to prepare a typewritten document in lieu of the handwritten document. Appellant and appellee met in October, 1995, to review that typewritten document. Appellee stated that he wanted to consult with his lawyer. The typed document was never signed.

On October 21, 1996, appellant filed a complaint in the Circuit Court for Calvert County, alleging breach of a contract to convey real property. The case was tried non-jury on March 27, 1997. By agreement of the parties, the case was bifurcated, and on March 27, the issue of whether a valid contract existed was tried. The issue of damages was deferred to a later date.

---

**2.** The entire document is as follows:
1. 25 Acres at $10,000. = $250,000.00
2. $150,000.00 down payment by Jan. 96
3. $100,000.00—financed 6% interest for 10 years—monthly payments _____
4. Due Oct. 1st or before 15th
5. Subject to percolation tests 21 bldg. sites & permits approval
6. Release 15 acres for $150,000. Release 10 Acres with $100,000. payment
7. Can be paid in full anytime w/out penalty

| /s/ Melvin Brown | /s/ Thomas Parran, III |
|---|---|
| Buyer Melvin Brown<br>Aug. 29, 1995 | Seller<br>Thomas Parran, III |

8. All expenses paid by buyer.
9. Thomas Parran III
   P.O. Box 127
   St. Leonard, Md. 20685
   410   586–2157 home
   410   326–0210 work
   Map 31 Parcel 25

The parties take a different view as to the meaning and effect of the August 29 document. Appellant asserted below and on appeal that the document was a contract and that he requested a typewritten document only for the convenience and use of his bank. Appellee asserted below and on appeal that the August 29th document was a letter of understanding and that the parties agreed that, subsequent to the meeting on August 29, they would consult with their respective lawyers with the intention to enter into a contract at a later date.

The parties also disagree with respect to certain events that occurred subsequent to August 29, 1995. Appellee maintains that the contract was contingent on approval for 21 building sites and that appellant learned that approval could only be obtained for a lesser number of sites. Appellant then offered a reduced purchase price, according to appellee, which he rejected. Appellant maintains that he offered to waive the condition.

The transcript of the hearing reveals that, after evidence and arguments by both sides, the trial court delivered an "oral opinion." The trial court found that all terms necessary to give rise to a contract were present and that the contract satisfied the Statute of Frauds. With respect to provision No. 5 in the contract, the trial court observed that there was no time stated within which approval had to be obtained, and as a result, it was unenforceable because it violated the rule against perpetuities. Alternatively, the trial court stated that the condition had not been met because it was learned that 21 building sites could not be approved and that the contract terminated at that time. The trial court observed that a new offer of $220,000 was made by appellant but rejected by appellee.

The trial court then permitted counsel to present further argument with respect to the court's alternative holdings applicable to provision No. 5. After further argument, the court permitted additional testimony to be offered by both parties relating to the issue of whether it had been ascertained that the condition could not be met and that the contract had

terminated. Upon close of that evidence, the court again entertained argument from counsel on that limited point and, in addition, requested memoranda on the applicability of the rule against perpetuities.

The trial court filed an Opinion and Order on May 1, 1997, pursuant to which it entered judgment in favor of appellee. The written Opinion and Order contains the following sentence: "At the close of all the evidence, the court ruled that the parties did in fact enter into a contract." The court then proceeded to discuss the rule against perpetuities, found it applicable, and declared the August 29, 1995 contract unenforceable. Appellant appealed to this court, and appellee cross-appealed.

On appeal, appellant inquires whether the trial court erred in holding that the August 29, 1995 contract violated the rule against perpetuities. Appellee agrees with the trial court's ruling on that issue but also inquires whether the trial court erred in finding the existence of a valid contract in the first instance. Additionally, appellee contends that, if a valid contract existed, the trial court determined that it terminated when it became clear that the condition would not occur, a finding which is not clearly erroneous.

### Discussion

The rule against perpetuities is a limitation on contingent future interests in property. The rule prevents property interests from vesting too remotely, so that current owners will not be discouraged from making the most effective uses of their properties. *Ferrero Construction v. Dennis Rourke Corp.*, 311 Md. 560, 572, 536 A.2d 1137 (1988). The rule is concerned with restrictions that render title uncertain as well as restraints on alienation. *Id.* at 572–73, 536 A.2d 1137. Under the traditional rule adhered to in Maryland, the future interest, at the effective date of the instrument creating it, must vest within the period of the rule (life in being plus 21 years). *Id.* at 564–65, 536 A.2d 1137; *Ringgold v. Carvel,* 196 Md. 262, 269, 76 A.2d 327 (1950).

■■■ Under the traditional rule, a court must construe the conveyance in question independent of the rule and then apply the rule. *Bowerman v. Taylor,* 126 Md. 203, 209, 94 A. 652 (1915). *See also Ferrero Constr.,* 311 Md. at 565, 536 A.2d 1137 (quoting *Fitzpatrick v. Mer.Safe, Etc. Co.,* 220 Md. 534, 541, 155 A.2d 702 (1959)) (it is a rule of law, not one of construction). The rule against perpetuities applies to contracts for the sale of real property such as the one before us. *See Dorado Ltd. Partnership v. Broadneck Development Corp.,* 317 Md. 148, 153–54, 562 A.2d 757 (1989). If a condition of the contract possibly may cause legal title to vest in the purchaser outside the period of the rule, the contract violates the rule and is not enforceable. *Id.*

■■■ In this case, the trial court found that settlement was conditioned upon the completion of percolation tests and the issuance of permits for 21 building sites. It further found that the contract did not contain a time period within which the condition had to be satisfied. The trial court concluded that the condition may not be satisfied within 21 years, and thus, the contract violated the rule against perpetuities.

Appellant contends that, when the time for complying with a condition precedent is not specified by the contract, a reasonable time period is implied. Relying upon *Stewart v. Tuli,* 82 Md.App. 726, 573 A.2d 109 (1990), appellant argues that a reasonable time for completing the percolation tests and obtaining permits for 21 building sites cannot possibly exceed the 21 year period of perpetuities. Relying upon *Dorado, supra,* appellee argues, and the trial court held, that, when the occurrence of the condition precedent is beyond the control of the parties, a reasonable time for performance, less than the perpetuities period, cannot be implied. As we explain below, the instant case is controlled by *Stewart* rather than *Dorado.*

In *Dorado,* the contract for sale of real property provided that the parties would settle on the lots covered by the contract "not later than ninety (90) days after the Seller has delivered to the Buyer evidence of sewer allocations for such lots." 317 Md. at 150, 562 A.2d 757. At the time the contract

was created, a county sewer moratorium was in effect. The Court of Appeals observed that, due to the moratorium, it was uncertain when, if ever, the seller would obtain a sewer allocation. *Id.* at 156, 562 A.2d 757. It was conceivable that the allocations, and thus settlement, could occur after the period of the rule against perpetuities. *Id.* The Court acknowledged that other courts, addressing contracts for sale of land which did not expressly provide a time for performance of conditions, had implied a reasonable time for performance within the period of perpetuities. *Id.* at 157, 562 A.2d 757. It declined to imply a reasonable time period, however, because the occurrence of the condition precedent to the conveyance was beyond the control of the parties. *Id.* at 158, 562 A.2d 757. At the time of suit in *Dorado,* the purchaser had fulfilled its obligation under the contract by applying for a sewer allocation. *Id.* Settlement, however, was completely within the hands of a third party, Anne Arundel County. *Id.* at 158–59, 562 A.2d 757. Because it was unknown whether the County would grant a sewer allocation within the perpetuities period, the contract was unenforceable. *Id.*

This Court decided *Stewart, supra,* less than a year after *Dorado.* In *Stewart,* the Novaks, sellers, entered into a contract for sale of real property with Tuli (the "Tuli Contract"). Under the Tuli Contract, the Novaks were entitled to examine certain financial information provided by Tuli. Upon such examination, the Novaks declared the information to be unsatisfactory and the contract to be null and void. Thereafter, the Novaks entered into a contract for sale of the same property to the Stewarts (the "Stewart Contract"). An addendum to the Stewart Contract provided that if Tuli attempted to keep "his contract alive," the Stewarts did not have to go to settlement until such time as clear title could be granted by the Novaks. One of the issues we decided was whether, due to the addendum, the Stewart Contract violated the rule against perpetuities. We held that it did not.

It is beyond question that the [Novaks], as sellers, were obliged to transfer good and merchantable title to the Stewarts, or, obliged to return the deposit which was in the

substantial amount of $100,000.00, unless any title defects could be remedied by legal action "within a reasonable time." It is equally clear that the parties were aware of a potential cloud on the title, *i.e.*, the *Tuli* contract, but in any event the parties contemplated and the contract mandated that any title clearing litigation be completed within a reasonable period of time. It would be ridiculous to suggest that a reasonable period of time would exceed a life in being and 21 years.

*Id.* at 736, 573 A.2d 109.

We distinguished *Dorado* on the basis that, in *Dorado*, the contract settlement was dependent upon the actions of a third party rather than upon the actions of one of the parties to the contract. *Id.* at 734, 573 A.2d 109. The grant or denial of sewer allocations could not occur during the pendency of a sewer moratorium, and the suspension of the moratorium was an occurrence beyond the control of the parties. *Id.* We, by contrast, viewed the judicial determination of the validity of the Tuli Contract to be within the control of the parties. *Id.* While, technically, the completion of title clearing litigation is dependent upon the actions of a third party, the particular court wherein such litigation is filed, it is not beyond the control of the parties in the same manner as are sewer allocations during the pendency of a moratorium. Additionally, the imposition or suspension of a moratorium involves complex policy issues outside of normal administrative or regulatory channels. In *Dorado*, there was nothing that the parties could have done to further the process.

In *Stewart*, unlike in the present case, there was language in the addendum specifically providing that title defects would be remedied by legal action "within a reasonable time." *Id.* As Judge Diana Motz, speaking for this Court in *Hays v. Coe*, 88 Md.App. 491, 505, 595 A.2d 484 (1991), observed, however, the presence of such language was not critical to our reasoning in *Stewart*.

In *Hays*, we considered whether a contract for sale of land violated the rule against perpetuities by virtue of the following clause included in an addendum to the contract:

> Because a title problem has arisen and a complete survey is necessary, we hereby extend this contract until a good and marketable title can be transferred.

*Id.* at 504, 595 A.2d 484. Although there was no language in the contract providing that title problems would be remedied within a reasonable time, we held that *Stewart* controlled. *Id.* at 504–05, 595 A.2d 484. We implied a reasonable time period for the correction of title defects, held that such time would occur within the period of perpetuities, and that, thus, the contract did not violate the rule against perpetuities. *Id.* The Court of Appeals later vacated *Hays* on other grounds. *Coe v. Hays*, 328 Md. 350, 614 A.2d 576 (1992). It expressly held, however, that we correctly decided the perpetuities issue. 328 Md. at 362, 614 A.2d 576.

■ Moreover, it is a matter of settled contract law that a court, construing a land sales contract that does not contain a specified time period for performance, may imply a reasonable time period when it is consistent with the intention of the parties and when what is reasonable is capable of being ascertained. *See, e.g., Jaeger v. Shea*, 130 Md. 1, 4, 99 A. 954 (1917); *Caplan v. Buckner*, 123 Md. 590, 602, 91 A. 481 (1914); *Lawson v. Mullinix*, 104 Md. 156, 169, 64 A. 938 (1906); *Johnson v. Johnson*, 40 Md. 189, 198–99 (1874). *But see Yerkie v. Salisbury*, 264 Md. 598, 287 A.2d 498 (1972) (refusing to imply reasonable time for performance in contract providing that settlement would be within 100 days of final zoning).[3]

---

3. In *Yerkie,* the memorandum evidencing the contract at issue was dated April 18, 1966. Over one year later, in August, 1967, the sellers' counsel sent a letter to the buyer informing him that, in view of the fact that the sellers had not received a deposit and the buyer had not made any efforts to rezone the property, the seller considered the contract to have been abandoned and void. Almost one year later, in July, 1968, the buyer asked the sellers to sign a rezoning application, and the sellers refused. Then, two years and three months passed before the buyer filed a complaint for specific performance of the contract. By the time the case reached the Court of Appeals, five years had passed, no application for rezoning had been made and, apparently, the buyer did not take the position that he had waived the condition. When the Court considered the case, it had before it the memorandum, which did not specify a date for applying for rezoning, and the buyer's affidavit,

While these cases all involved actions for specific performance, and the case before us is an action for damages, we believe that that distinction is immaterial. If a contract is capable of being specifically enforced after the lapse of a reasonable time period, performance within a reasonable time period becomes an enforceable term of the contract. Accordingly, the absence of a provision that contingencies will be performed within a reasonable time does not distinguish this case from *Stewart*.

Similarly, this case is not distinguishable from *Stewart* by virtue of the fact that the ultimate issuance of the permits is dependent upon the actions of Calvert County. The ultimate control of Calvert County over issuance of the permits is not significantly different from the ultimate control that a court has over disposition of title clearing litigation. Yet, just as it would be ridiculous to presume that title clearing litigation might take 21 years to complete, it would be ridiculous to presume that it might take Calvert County 21 years to act on appellant's application for permits.[4] Indeed, a number of cases have involved enforcement of land sales contracts that condition settlement upon rezoning or obtaining requisite permits, yet, in none of these cases was the rule against perpetuities even raised. *See, e.g., Michael v. Towers*, 253 Md. 114, 119, 251 A.2d 878 (1969) (contract contingent upon rezoning);

---

which expressly stated that *"there was no specific agreement between the parties as to when the rezoning would be applied for other than it would be at a time mutually acceptable to both parties...." Id.* at 601, 287 A.2d 498 (emphasis supplied by Court). In addition, the trial transcript revealed that, in response to a question by the trial court of when, if ever, the parties were required to apply for rezoning under the contract, the buyer's counsel replied, " I don't know." In light of all of this evidence, the Court held that the contract was too vague and uncertain to be specifically enforced. The Court could not have implied a reasonable time period for performance because the evidence was inconsistent with such implication.

4. The rule against perpetuities does not require that Calvert County grant the permits within the period of perpetuities, but merely, that it take action within the period. Just as the grant of the requisite permits would allow settlement to proceed, and title to vest in the buyer, the denial of the requisite permits would extinguish the contract and the buyer's future contingent interest.

*Sears v. Polan's*, 250 Md. 525, 243 A.2d 602 (1968) (contract provided that settlement would be within 30 days after final determination of rezoning application by zoning authority); *Scheffres v. Columbia Realty Co.*, 244 Md. 270, 275–76, 286, 223 A.2d 619 (1966) (settlement contingent upon rezoning and approval from Board of Education to trade certain acreage); *Cadem v. Nanna*, 243 Md. 536, 543–44, 221 A.2d 703 (1966) (contract contingent upon rezoning). *See also Paape v. Grimes*, 256 Md. 490, 497, 260 A.2d 644 (1970) (clause providing for settlement " 'on or before (90) days from date hereof or as soon thereafter as report of title can be obtained' " was not so indefinite as to destroy enforceability of contract).

We believe that *Dorado* is consistent with these cases that, as a matter of contract law, have implied reasonable time periods for the completion of conditions. The Court, in *Dorado*, did not imply a reasonable time period within the period of perpetuities because it was faced with a moratorium that prevented the required action by both the party to the contract seeking to satisfy a condition and the administrative personnel responsible for processing the necessary applications. In other words, the process to satisfy the condition was not available. Whenever the duration of a moratorium is uncertain and dependent upon governmental and political policy decisions, a reasonable time to satisfy, if possible, criteria specified in statute or regulation is not ascertainable by the court. At oral argument, the parties agreed that the issuance of permits in this case was governed by applicable laws and regulations and that no moratorium was in effect. This permitted processing and ultimate disposition of the applications within a reasonable time within the period of perpetuities. Thus, *Dorado* does not control.

Before we conclude, there is one facially troubling aspect of *Dorado* that we must address, that is, its discussion of *Commonwealth Realty Corp. v. Bowers*, 261 Md. 285, 274 A.2d 353 (1971), a case involving a real estate option contract. While discussing *Bowers* in *Dorado*, the Court of Appeals commented that the contract contained a clause similar to that at issue in *Dorado*. Specifically, the Court noted that the *Bow-*

*ers* contract provided that Commonwealth's option would remain open until it applied for and received zoning approval and permits.[5]   317 Md. at 157, 562 A.2d 757.   An examination of the facts in *Bowers*, however, reveals that it is distinguishable from the instant case.

In that case, Commonwealth sued Bowers for specific performance of an option contract after Bowers already had conveyed the land to another purchaser.   The option agreement provided in pertinent part as follows:

> This Agreement shall extend for 180 days; or, if the requisite zoning and permits, described in Article 4 hereof have not been finally issued or denied beyond appeal, until 15 days after such final action thereon.   Buyer may renew it for an additional period of 180 days from the later of the above dates by paying as consideration therefor, monthly in advance, the sum of $2.00 for each day so renewed.

261 Md. at 287, 274 A.2d 353.   Commonwealth argued that it had properly recorded the option agreement and that there could be no effective transfer of the Bowers property "until permits had been issued, 15 days had elapsed or, if the 180 day additional period was renewed by Commonwealth, until the expiration of that period."   *Id.* at 295, 274 A.2d 353. Bowers countered that the option was not extended by nonissuance of the permits because Commonwealth had failed to comply with an implied condition precedent that Commonwealth must, within the initial 180 day term, make application to the Health Department for a permit.   *Id.*   The Court, assuming *arguendo* that there was no implied condition precedent, held that the provision for duration of the option contract, as construed by Commonwealth, violated the rule against perpetuities.   *Id.* at 295–96, 274 A.2d 353.   The Court explained,

---

**5.**   In actuality, the contract did not condition the option on receipt of zoning approval, but only upon the receipt of "special and usual permits."   *See Bowers*, 261 Md. at 287–88, 274 A.2d 353.   Apparently, a prior draft of the agreement had contained language regarding zoning approval, but that language was stricken in the final version of the contract.   *Id.*

> Inasmuch as no health department permit has been issued—and will not be issued until Commonwealth presents an application for such a permit to the Bowers, their heirs and assigns—Commonwealth can postpone the *vesting* [emphasis in original] of the fee simple estate in the Bowers' land indefinitely, i.e., for a period long beyond the period permitted by the Rule.

*Id.* at 297–98, 274 A.2d 353. Because the Court, accepting Commonwealth's position, assumed for the sake of argument that there was no time requirement for applying for the requisite permits, *Bowers* is distinguishable from the instant case.

We believe that the fact that *Bowers* involved an option contract, rather than a bilateral contract for sale of land, further distinguishes *Bowers* from this case. A significant difference between a bilateral contract for sale of land and an option contract is that a seller can specifically enforce the former, but not the latter. A time for performance cannot be implied in an option contract because, while an optionee may have to comply with certain conditions precedent prior to exercising the option, the optionee is not required to exercise it. In the case of an option, the issue is one of duration of the right rather than time for performance of the obligation. For these reasons, *Bowers* does not control.

■ We now turn to appellee's contentions. We disagree that the trial court erred in determining that there was a valid contract in the first instance. Whether or not there was a meeting of minds sufficient to form an enforceable contract was a contested issue of fact. Based upon our review of this record, we cannot say that the trial court's determination in that regard was clearly erroneous.

■ Similarly, we do not agree with appellee's second contention. As appellee contends, during the evidentiary hearing below, the trial court initially found that appellant terminated the contract when he called appellee to inform him that he could not obtain 21 building lots, and offered appellee a lower purchase price. The court based this finding upon

appellee's uncontroverted testimony. After the court articulated this finding, appellant's counsel revealed that he had not put on evidence regarding the alleged termination because of his understanding of the proper scope of the hearing. The court then permitted appellant to testify on this issue. Appellant's testimony directly contradicted appellee's testimony on this issue, and the trial court never revisited its finding, instead, choosing to base its ruling solely on the rule against perpetuities. Thus, it appears that the issue of termination remains an unresolved factual issue that may be revisited upon remand.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.